# Heckert *against* Fegely.*

One of the co-defendants, upon whom the process was not served, may be a competent witness for the plaintiff to prove particular facts material to the issue; but he is not competent for the purpose of establishing the fact of a partnership between himself and his co-defendants.

The rule, that all who participate in profits are liable as partners, is subject to many exceptions. If three enter into an agreement, by the terms of which one is to do certain things and the other two certain things, each at their own expense, and each to be entitled to an equal share of the profits arising out of the subject-matter of the contract, this does not constitute them all partners and make them all liable for expenses incurred by either in the performance of their part of the contract.

ERROR to the District Court of *Lancaster* county.

William Fegely and Reuben Fegely against George Heckert, Matthew Branagan and Thomas Cowen, partners, trading in the name of Cowen, Branagan & Co. The cause was argued by

*Park* and *Jenkins,* for plaintiffs in error.

*Long* and *Frazer,* for defendants in error.

The case is fully stated in the opinion of the court, which was delivered by

Huston, J.—This was an action of debt on a promissory note, as follows :

　　　　　　　　　　　　　　　　*Shamokin, October* 25, 1834.

$1309.37　　　Fifteen days after date we promise to pay to William and Reuben Fegely or order thirteen hundred and nine dollars thirty-seven cents, without defalcation, for value received, and without stay of execution.

　　　　　　　(Signed)　　Cowen, Branagan & Co.

The narr. is a single count in debt on this note. The writ was served on George Heckert alone. The other defendants did not live in the county. The plaintiff gave in evidence the following lease and agreement :

* This case was argued at an adjourned court held at Lancaster in August 1843.

[Heckert v. Fegely.]

Memorandum of an agreement entered into the 4th day of March 1839, between George Heckert and Matthew Branagan and Thomas Cowen, as follows, viz.:

The said Heckert leases to the said Branagan & Cowen, for and during and until the end of the next ensuing coal season, the coal mines now opened at Buck Ridge, called respectively, No. 1, 2, 3 and 4, upon the following terms, viz.: The said Heckert is to furnish the necessary drift-cars, drift-rails and slabs, and the necessary iron for the drift-roads. He also leases for the same time, without receiving rent, all the dwelling-houses, stable and blacksmith shop at Buck Ridge, with authority to notify and dispossess any or all of the present tenants or occupants of the said buildings. The said George Heckert will also undertake to furnish the funds necessary to conduct the said coal business during said time; he will also cause to be built, as soon as may be, the wharf and schute for the eastern two mines and drift railroads from the schute into the said mines; he will also cause the main railroad to be extended sufficiently far to place a train of empty cars upon for the conveniency of loading.

The said Branagan & Cowen will, at their own expense, drive the gangways of the said mines, mine the coal, cut and furnish themselves with all necessary timber off of the company's lands; and do and perform and supply themselves with all other necessary things for successful mining, and deliver the coal in wagons at the foot of the Buck Ridge Company's road on the level next the turnout from the Danville and Pottsville railroad. Branagan & Cowen will accept, at a valuation to be made by William Fegely and Kimber Cleaver, such of the company's implements and tools as may be now offered them for sale; they will also accept at cost the gangways already driven and now standing in coal from where they break off the first breast, they receiving the coal that came out of the drifts and is now lying on the banks; they will indemnify and save harmless the said Heckert from all breakages and damages happening to the Danville and Pottsville Railroad Company's cars off of their road. The said Branagan & Cowen are to perform all their services and bear all their outlays and expenditures at one dollar per ton for the coal delivered in cars at the foot of the plane and level aforesaid. The said Heckert is to do and perform the several matters and things herein specified, and to sell the coal to the best advantage, and collect the proceeds at fifty cents per ton; and if the market price of coal, after deducting rent, railroad and canal or river transportation, does not afford these sums, then there is to be a mutual deduction from said sums; if, on the contrary, the market price, as aforesaid, should afford larger sums or dividends, then there is to be a mutual increase added. The rate of increase or diminution shall be as follows: two-thirds to Branagan & Cowen and one-third to Heckert. If any difference should arise as to the true construction of this

[Heckert v. Fegely.]

agreement, such difference is to be referred to Kimber Cleaver, whose decision thereon shall be final and conclusive between the parties.

The weight of coal shall be gross weight, and is to be ascertained by the weigh-master at Sunbury. The timber is to be cut in Buck Run ravine, at such convenient places as the said Heckert may point out. In witness whereof the said parties have hereunto set their hands and seals this 4th day of March 1839.

Witnesses:

GEORGE HECKERT, [SEAL.]

BENJAMIN UPDEGRAFF,  MATTHEW BRANAGAN, [SEAL.]

KIMBER CLEAVER.  THOMAS COWEN, [SEAL.]

The defendants had under our law and practice given notice to the plaintiffs to produce their books, and all orders and drafts given to the plaintiffs by the defendants or either of them singly or by two of them in pursuance of this rule. The books were produced and showed a long account against Matthew Branagan; also an account against Thomas Cowen; also an account against Branagan & Cowen; also an account against Cowen and Branagan; also orders drawn upon Messrs Fegely by Thomas Cowen & Co.; also orders drawn on same by Cowen & Branagan; also, by Thomas Cowen alone; also, by M. Branagan & Co. Not one charge against Cowen, Branagan & Co. or against Branagan, Cowen & Co.; nor were orders drawn in these names. Only the note in question and two others dated since were drawn as this note is. It was also proved that *the note in suit was composed of the aggregate of all these accounts.* Also, that Cowen & Branagan had separate families; one lived at the mines and one at Shamokin, a mile off; that each kept boarders. The articles charged were for provisions, groceries, dry-goods, &c. It also appeared that a day or two before this note was given, Cowen & Branagan drew an order on Heckert for about $1000, which he refused to accept. Joseph Snyder proved that in October 1839, in conversation with Heckert respecting the coal business and price of coal, Heckert, after stating the price at which it was selling, said, if they could sell their coal and make seventy-five cents clear, it would be a good business. He said, " there were three of them in partnership, and if they could clear twenty-five cents a-piece on eight or ten thousand tons sent down in a season, it would be making a good summer's work. Who were the partners he did not say; nor did I ask him. I then replied to Mr Heckert, I thought the Fegelys would come out behind with Cowen & Branagan. He said, no; he had the coal in his possession, and he would be bound to see the Fegelys paid. We dropped the subject." Ziba Bird said, Branagan and Cowen had given him an order on Heckert, who refused to accept it at that time; for that he had made an engagement to settle other accounts of the Messrs Fegelys. This was in October 1839.

[Heckert v. Fegely.]

The plaintiff offered the deposition of Matthew Branagan, taken on notice under a rule of court, which was objected to, admitted, and a bill of exceptions.

The deposition is as follows: "That he was one of the firm of Cowen & Branagan & Co. mining coal at Buck Ridge, near the town of Shamokin, in Northumberland county and State of Pennsylvania in the year 1839. That the said firm paid the miners and other men employed at mining said coal by orders on William & Reuben Fegely, and the said firm also received of the said William & Reuben Fegely sundry merchandise, oil and some money, all of which was applied in carrying on said mining operations, and that they received in manner above stated to the full amount of the certain promissory notes in favour of William & Reuben Fegely, signed Cowen, Branagan & Co. The deponent signed these notes himself, and the "& Co." was written at the same time the notes were given. The deponent was continually employed during said mining and shipping, either working at the mine aforesaid, or at Sunbury, loading coal into boats. The said firm mined during said season, and shipped to George Heckert of Lancaster, who was one of the parties, or to such places as he directed, about 4600 cars of coal, of which the said Heckert was to collect the proceeds, and divide, according to the agreement, between me and Thomas Cowen and the said Heckert, each their just share thereof; which he, the said Heckert, has failed to do. The deponent further saith, that the said firm paid William Glover for labour done, unloading coal on the wharf at Sunbury, with an order on William & Reuben Fegely. That the whole expenses of the mining operations of the said firm from the Buck Ridge mines was taken out of the plaintiffs' store either in money or orders, or in goods, except some money that Mr Heckert advanced at first, and that if the plaintiffs had not agreed to furnish the means of carrying on the business as they did, we could not have carried on at all, for Mr Heckert did not supply the funds as the articles of agreement called for, and he knew that we were getting funds in this way from the plaintiffs. That the whole amount called for on the face of the three notes, on which these suits have been brought, is due from the firm to the plaintiffs. And further saith not."

There is supposed to be some contrariety in the decisions as to whether a partner can (although not sued) be a witness in a case in which the firm is one of the parties. It will be found this depends on the circumstances and purpose for which such testimony is offered. The plaintiff, in a suit against the firm in a case where the co-partnership is unquestionably proved or admitted, may prove his declarations, or, if he agrees, examine him to prove the settlement of accounts or delivery of the goods; but where the existence of the partnership is denied, and is the principal matter in contest, one who is clearly liable is not a witness to discharge

[Heckert v. Fegely.]

himself, by proving that another is liable for the debt or part of it; he is swearing directly in favour of his own interest. Branagan & Cowen were by the articles of agreement " to perform all their services and bear all their outlays and expenditures at one dollar per ton for the coal delivered in cars at the foot of the plane and level aforesaid." This is even stronger than the case of *Purviance* v. *Dryden*, (3 *Serg. & Rawle* 406). His deposition ought not to have been admitted.

The next question arose on an exception to the opinion of the court to the plaintiffs' third point, " that the articles of 4th March 1839, entered into by George Heckert, Matthew Branagan and Thomas Cowen, and given in evidence in this cause, constituted a partnership, and render them liable for the partnership debts." This was answered in the affirmative, at least so far as respects third persons; and renders them liable for the partnership debts contracted for carrying on the partnership concern.

There was a time when the common law, or at least those who administered it, were fond of general rules; but general rules can never be safely applied to transactions founded on different circumstances, nor to engagements in which the duties, advances, labours and agreements of parties are essentially different from each other. The general rule that all who share in profits are liable as partners, has long been subject to many exceptions. The owner of a lighter, instead of hiring a captain and hands, agrees to furnish the vessel with one who is to furnish hands to work the vessel: this does not make them partners. It is very usual, in this State, that the owner of a farm leases it to a farmer who is to find ploughs, harrows, wagons, &c. and food for his hands and horses, and the produce of the farm to be equally divided. No one has yet said the landlord was liable for horses, &c. or provisions purchased by the farmer. The real question is, was G. Heckert, on the face of this lease and agreement, liable for the pay to the miners employed by Branagan & Cowen, and for the provisions and boarding of those hands, and for the groceries, dry-goods and food of the families of Branagan & Cowen? Was such the intention of the parties to the agreement of 4th March 1839, or is the effect of that agreement such as to render Heckert liable to the plaintiff who furnished those articles which are the consideration of the note in question.

As to the first question the agreement is plain and express, Branagan & Cowen were to perform all services and bear all outlays. In another part, " Branagan & Cowen will, *at their own expense*, drive the gangways of the said mines, mine the coal, and supply themselves with all other necessary things for successful mining, and deliver the coal in wagons at the foot of the Buck Ridge Company's road on the level next the turn-out from the Danville and Pottsville Railroad." They were to accept at a valuation such implements and tools as were offered to them for sale. Heckert leased them the mines, houses, &c. without

charge; was to furnish funds to conduct the coal business during the season, (it seems agreed this means he was to advance the necessary money and be remunerated out of the proceeds of coal sold), and he was to cause to be built a wharf and schute for the two eastern mines, and drift-railroads, to extend the main railroad, for conveniency of loading, &c. &c. Thus it is specifically agreed what each party is to furnish and do — equivalent to what each shall put into the concern. If Heckert had to borrow money to do his part, clearly Branagan & Cowen were not to be liable for this. So, if they borrowed money to pay their hands, or to buy provisions, or went in debt for these things, he is not answerable. It is expressly agreed what each party shall do and pay, until the coal is in the cars; and each, so far, was individually to receive pay for him and themselves. It is, in principle, precisely the case of *Loomis* v. *Marshall*, (12 *Conn.* 69); see also 14 *Pick.* 192; 18 *Wend.* 175; *Story on Part.*, sects. 34 *to* 52; *Cary on Part.* 8, 9, 10.

But men may be liable as partners to third persons, though not partners as between themselves. This may be, among other cases, where they hold themselves out as partners and credit is given to them as such. Was that the case here? The books and charges are against M. Branagan alone, Thomas Cowen alone, or against them B. & C. or C. & B. (this evidently because one lived in town and the other at the mines, to show what went to each of those places); but no charge against them and Heckert, or B., C. & Co., until this note. I suppose it to be clear, that if men agree to become partners, and one borrows money to enable him to put in his proportion of the capital agreed on, the firm will not be liable for this; and if after the company is in operation that man gives the note of the firm for this debt, it will not alter the case. So if each is to pay in every six month, *e. g.* $500, and one borrows for himself this $500, the firm is not liable, unless it was lent on the credit of the firm by one who did not know it was for the use of the individual to whom he lent it. In this case Cowen & Branagan, who as between themselves were partners, were to furnish and support the labourers; this in consideration of *Heckert furnishing* and doing certain things. If the Messrs Fegelys knew and understood this, how can they now claim from one not liable for this debt by the articles of agreement, or the intention of the parties to it, and not supposed liable when the credit was given? for it will not be in the usual course of business to charge goods for six months to any but those who are supposed liable, or to charge them to one of a firm or to two of a firm, if it is intended to hold all liable: but somehow or other this may be explained. It must, then, be submitted to a jury to whom the credit was given. It will be observed that the neighbours, Snyder and others, did not consider Heckert liable; that is, it was not considered at Shamokin that he was a partner. If he did make any agreement to see the plaintiffs paid, he must be sued on that agreement. That, if proved, will not

[Heckert v. Fegely.]

make him liable as a partner; it may tend to show he was not considered by the Fegelys to be liable as a partner.

It was much debated whether, if this note was not recoverable in whole, any part of it can be recovered. As this cause goes back, this point may not be material, for other counts may be added and a recovery of part on them, if any is due, as in *Robinson* v. *Bland*, (2 *Burr.* 1082), where there were three counts. The law seems to be, if a bond is given with several conditions, some good and some bad, it may be good in part; but if a bond is given to do a thing or for having done a thing forbidden by Act of Parliament and also to pay a just debt, the whole bond will be void, because the Act of Parliament makes it so. *Hobart* 14; 2 *Lord Raym.* 1459. But unless the Act of Parliament expressly enact that all securities and instruments which contain or are given for matters contrary to the Act shall be void, so much only of such securities and instruments as are contrary to the Act, shall be avoided, and the rest shall stand good. See *Gaskell* v. *King*, (11 *East* 165); *Howe* v. *Synge*, (15 *East* 441); *Fuller* v. *Abbott*, (4 *Taunt.* 105). This seems to be the modern doctrine, and such as has been acted on in this State, where, though taking more than six per cent. per annum for money is prohibited and made penal, yet the bond or note has not been declared void, and on it the debt and legal interest has been recovered.

Judgment reversed, and a *venire de novo* awarded.