## Irwin *et al. versus* Bidwell *et al.*

1. Parties may become liable as partners: 1. When they are actually partners by agreement. 2. When, not being partners or entitled to a share in the profits, they hold themselves out as partners by acts or declarations, on the faith of which they are trusted. 3. When by agreement they are to receive a share of the profits, not a commission on profits,—or a sum equal to a certain share of profits as compensation for services.

2. A loan on usury to one, to be employed in his business, does not make the lender a partner.

3. A mortgage to a partner on partnership property for capital invested, puts him in no better position than without it.

4. Such partner has a lien as against his fellow; as to partnership creditors it would not avail.

5. Bidwell agreed, September 2d 1867, to lend Jones $10,000, to negotiate

[Irwin *v.* Bidwell.]

at their cost $5000 of paper for Jones, and to protect it on renewal till January 1st 1870; Jones to repay the $10,000 and take up the paper before January 1st 1870, to pay Bidwell 30 cents for every barrel of oil refined by him; Jones's stipulations to be secured by mortgage to Bidwell, Jones to keep accurate accounts of oil refined, not to lease or encumber the refinery, nor pursue a speculative business; to have the entire control of the business; the posting of the books to be by a person satisfactory to Bidwell, and be open to his inspection; Bidwell, if he elected before January 1st 1870, to become a partner, then the $10,000 and $5000 to be partnership capital; the partnership to date from September 1st 1867, and continue to January 1st 1870, Bidwell during that time to participate in the profits less the 30 cents per barrel received before the election; Jones to receive $2000 salary; upon winding up Bidwell to receive the capital advanced and his proportion of the profits and be subject to losses: until election no partnership to exist. Bidwell did not elect. *Held,* Bidwell was not liable to creditors as partner of Jones.

6. An agreement to become partners at a future time will not make the parties partners.

7. An inchoate partnership must be complete before liability can attach.

October 15th 1872.    Before Thompson, C. J., Read, Agnew, Sharswood and Williams, JJ.

Error to the District Court of *Allegheny county:* Of October and November Term 1870, No. 130.

This was an action of assumpsit brought December 9th 1868, by James Irwin and William Holmes, trading as James Irwin & Co., against Oliver B. Jones, D. W. C. Bidwell and Henry Phipps, Jr., trading as O. B. Jones.

Judgment for want of an affidavit of defence was taken against Jones; the other defendant filed an affidavit of defence and pleaded, "Non assumpsit," "No partnership with leave, &c."

The action was for goods sold and delivered. There was no question as to the delivery of the goods to Jones at the Duquesne Oil Refinery, the only question in the case was whether the other defendants were partners of Jones.

The case was tried December 16th 1869, before Kirkpatrick, J. The plaintiffs gave in evidence the following article of agreement:

"Articles of agreement entered into this 2d day of September, in the year of our Lord 1867, between D. W. C. Bidwell and Henry Phipps, Jr., * * * of the one part, and Oliver B. Jones of the other part, witnesseth:

"That the said parties of the first part have agreed to and with the said Jones, for and in consideration of the sum of $1 to them in hand paid by the said Jones, * * * and of the payments, conditions and covenants of the said Jones hereinafter set forth, * * * to loan to him, the said Oliver B. Jones, the sum of $10,000, and to negotiate, at their proper cost and expense, the commercial paper of the said Oliver B. Jones, to the additional amount of $5000 : the said sum of $10,000 to be paid by the said Jones, on the 1st day of January, A. D. 1870, and the said commercial paper of the said Jones, to the amount of $5000, or the renewal of the same,

[*Irwin v.* Bidwell.]

to be protected by the said parties of the first part, until the 1st day of January, A. D. 1870, at which date the said Jones is to take up the said commercial paper.

"In consideration whereof, the said Jones covenants to and with the said parties of the first part, * * * that he will pay to them the said sum of $10,000, on or before the 1st day of January, A. D. 1870, that he will lift the said commercial paper, that he will pay to them at the beginning of each quarter, commencing on the 1st day of January, A. D. 1868, the sum of thirty cents per barrel for every barrel of oil refined at his oil refinery, known as the Duquesne Oil Refinery, situate * * * from the 1st day of September, A. D. 1867, until the 1st day of January, A. D. 1870; provided that the said royalty or sum of thirty cents per barrel shall not be paid on any oil refined at said refinery in excess of 20,000 barrels in any one year; that he will, upon the receipt of said sum of $10,000, and of the proceeds of said commercial paper, clear of discount, execute in favor of the said parties of the first part, a bond, conditioned to repay to the said parties of the first part, the said sum of $10,000 to lift and take up the said commercial paper, for $5000 or its renewal, on the 1st day of January, A. D. 1870, to pay to the said parties of the first part, at the beginning of each quarter, commencing on the 1st day of January, A. D. 1868, the sum of thirty cents per barrel, upon every barrel of oil refined; * * * the said bond to contain clauses for commissions, to provide that upon failure to pay the said royalty or sum of thirty cents per barrel in quarterly payments, as aforesaid, or in thirty days after any quarter shall have expired, the whole of said bond to become due and payable; said bond to be secured by mortgage of the ground and works of the said Oliver B. Jones, known as the Duquesne Oil Refinery, situated * * * said mortgage to contain the clauses and provisions aforesaid.

"And the said Oliver B. Jones further covenants, that he will pay to the said parties of the first part the said royalty * * * that he will keep accurate accounts of all oil refined by him, and furnish to the said parties of first part copies thereof once every three months, or as often as may be desired by the said parties of the first part, and that in default of the payment of the said royalty or sum of thirty cents aforesaid, and the copies of the accounts as aforesaid, a scire facias on said mortgage, shall issue for the recovery of the said royalty * * * on the basis of a production of 20,000 barrels per annum, in addition to the other sums mentioned in said mortgage.

"That he will not sell, lease or encumber the said refinery or discontinue the operation of the same, until after the 1st day of January, A. D. 1870.

"That he will not pursue a speculative business nor contract to sell refined oil without having first secured the crude material for

the manufacture of the same, nothing herein contained however, to interfere with the exclusive control of the said Jones with the said business, which is to be conducted in the same manner as he has heretofore conducted the same under the limitation aforesaid.

"That he will immediately open a new set of books to be kept by double entry, the original entries of which may be made by the said Jones, but the posting thereof shall be done by persons satisfactory to the said parties of the first part, and said books shall be open to the inspection of the said parties of the first part at all times.

"The said Jones further covenants and agrees, that the said parties of the first part may, on or before the 1st day of January, A. D. 1870, elect to become partners with him in the said business to the extent of three-tenths interest, and in the event thereof, the said sum of $10,000 cash aforesaid, and the further sum of $5000, proceeds of the commercial paper aforesaid, shall be treated as capital of the partnership, the said parties of the first part to lift and return the said commercial paper to the said Jones, the said partnership to date from the 1st day of September, A. D. 1867, and to terminate on the 1st day of January, A. D. 1870, the said parties of the first part to participate in the profits during the term of partnership to the extent of three-tenths, less the said royalty or sum of thirty cents per barrel, before the election received. He, the said Jones, in the event of such partnership, to receive from the business of said partnership as salary the sum of two thousand dollars per annum, from the 1st day of September, A. D. 1867. And upon the winding up of the affairs of said partnership, the said parties of the first part shall be entitled to receive in cash out of the partnership effects, the amount of capital advanced by them and their proportion of profits, if any, subject nevertheless to partnership losses.

"That upon the election of the said parties of the first part, to become partners as aforesaid, notice thereof in writing shall be given to said Jones, and until said notice of such election is given, no partnership between the said parties exists, or shall exist by virtue of this agreement, anything herein contained to the contrary thereof notwithstanding.

"And the said Oliver B. Jones further covenants and agrees, that he will keep a line of insurance on his refinery and the buildings connected therewith, of six thousand dollars, which he will assign to them, the said D. W. C. Bidwell and Henry Phipps, Jr., said insurance to be taken out at the expense of said Jones, and will take out additional insurance on additional improvements to be assigned as aforesaid.

"That he will also keep up a line of insurance on his refined oil, kept at the said refinery, equal to an average amount so kept, and will assign to Bidwell & Phipps so much thereof as the interest

[Irwin *v.* Bidwell.]

therein may amount to under this agreement. And he does further, as part of the consideration under this agreement, hereby assign, transfer and set over unto the said Bidwell & Phipps all the residue of said last-mentioned insurance, in case of loss by fire, and does hereby constitute the said Bidwell & Phipps his true and lawful attorneys for him, and in his name to collect and receipt the said last-mentioned insurance; and does hereby agree to execute such instruments of writing as may be necessary to effectuate this covenant; the proceeds of such last-mentioned insurance to be applied, in the discretion of the said Bidwell & Phipps, either to the rebuilding of the refinery aforesaid, or to the reduction of the indebtedness of the said Jones to them as herein set forth."

On the 14th of September and 17th of October 1867, Jones received from Bidwell and Phipps the $10,000, and on the 17th of October, Bidwell and Phipps received from Jones his mortgage of that date, reciting the agreement, and conditioned as was stipulated therein.

The plaintiffs' points were:—

1. The articles of agreement, dated September 2d 1867, in evidence as having been executed and carried into effect, constituted the parties thereto *partners* as regards creditors, and that the defendants, D. W. C. Bidwell and Henry Phipps, Jr., are liable, with O. B. Jones, to the plaintiffs for the amount of their respective claims.

2. Secret agreements, whereby one party advances capital or funds to be used in a manufacturing venture, and reserves the right to take interest for the use of the funds or to take a share of the profits, as he may deem most advantageous to himself, is, as against creditors of the said business, contrary to public policy, and the legal effect of such an agreement is to make the parties thereto partners and liable for the debts of said business.

3. Under the pleadings and evidence, the plaintiffs are entitled to recover.

The defendants' points were:—

1. The evidence offered by the plaintiffs is insufficient to constitute the defendants, Bidwell & Phipps, partners with O. B. Jones, as to the plaintiffs or other third persons, or charge them as such partners, and the plaintiffs are not entitled to recover against Bidwell & Phipps.

2. Under all the evidence in this cause, the verdict of the jury should be in favor of defendants, Bidwell & Phipps.

The court reserved the questions of law presented by the respective points of plaintiffs and defendants, and directed the jury to find for the plaintiffs, subject to the decision of the court on the said questions of law reserved.

The jury found for the plaintiffs for $3196.51.

[Irwin *v.* Bidwell.]

The court (Kirkpatrick, J.) afterwards entered judgment for the defendants *non obstante veredicto.*

The plaintiffs took a writ of error, and assigned for error the entry of judgment for the defendants.

*G. Shiras, Jr.,* for plaintiffs in error.—A right to an account, a right to participate in the profits, when accompanied with an active and positive control and management of the affairs of a business, create a partnership.

The object of the limited or special partnership acts was to modify the rules of commercial law in favor of a party who should advance a certain sum of money and refrain from transacting any business, on account of the partnership. The slightest departure from the provisions of the statute will render the special partner a general one : Richardson *v.* Hogg, 2 Wright 153.

One who is a partner in fact, though not known to be so, is liable upon all the partnership engagements, to the same extent as though his name had never been concealed : Hoare *v.* Dawes, 2 Douglas 371; Edwards *v.* Tracy, 12 P. F. Smith 374; Winship *v.* Bank of United States, 5 Peters 561; Grace *v.* Smith, 2 W. Black. 998; Purviance *v.* McClintee, 6 S. & R. 259; Parsons on Partnership 141, 142.

*S. Schroyer, Jr.,* and *J. I. Kuhns,* for defendants in error.— An agreement for a loan of money, which gives the creditor making the loan a right, within a certain period, and in a certain manner, to elect to become a partner with his debtor from the date of the loan, and convert his debt into partnership stock or capital, does not make him a partner as to third persons from the date of the loan, where no such election has been made, and where there is an express provision that until such election has been made in the manner stipulated no partnership shall exist, and where the credit has been given to the debtor alone, and the creditor has not in any way held himself out as a partner : Gabriel *et al. v.* Evill, 9 M. & W. 295; Howell *v.* Brodie, 6 Bingham N. C. 44; Dickinson *v.* Valpy, 10 Barn. & Cr. 128; Fox *v.* Clifton, 6 Bingham 776.

The opinion of the court was delivered, October 21st 1872, by

SHARSWOOD, J.—There are three classes of cases in which parties may become liable to third persons as partners: 1st, When they are actually partners *inter se* by express agreement. 2d, When not being partners *inter se,* or entitled to any share of the profits, they hold themselves out to the world as such by acts or declarations, and the particular creditor who sues trusts them as partners on the faith of such acts or declarations. 3d. When there is an agreement to receive a share of the profits as such and not a mere commission on profits, or a sum equal to a certain share of the profits, as a compensation for services.

[Irwin *v.* Bidwell.]

It has not been, and cannot be, maintained that the facts of this case bring it within either of the two first classes. If there were any acts amounting to a holding out to the world as partners, there was no evidence that the plaintiffs gave credit to the defendants upon the knowledge and faith of such acts. Nor was there here any agreement to participate in the profits. The written contract by which Jones undertook to pay Bidwell and Phipps thirty cents a barrel upon every barrel of oil refined at his refinery had no relation whatever to the profits of his business. That agreement, considering the stipulated sums as a compensation for the advances made by Bidwell and Phipps, was clearly usurious, and could not have been enforced beyond the lawful rate of 6 per cent. per annum on the amount of the loan. Nothing can be more manifest than that a loan at an usurious rate of interest to a person to be employed in his business does not make the lender a partner: Parsons on Partn. 141, 142. Supposing, however, the objection of usury to be out of the way, and the agreement not to be affected by that taint, Bidwell and Phipps were entitled under its terms to thirty cents upon every barrel of oil refined, whether the business in which Jones was engaged and in which the money was to be invested turned out to be a profitable or losing one. Nor had they any right to call for an account other than of the number of barrels refined, nor had they any equity or lien superior to that of any other mere creditor of Jones by virtue of that stipulation. Had he proved insolvent (apart from their mortgage security) they must have come in *pro rata* with all his other creditors, whether for debts contracted in carrying on that business or on any other account. If this be so, and we think that it clearly is so, then the other provisions of the contract relied on do not alter the case. Certainly the bond and mortgage, which were mere securities for the advance, cannot change their relation from that of creditors to partners. A mortgage on partnership property to a partner for capital invested puts him in no better position than he is without it. Subject to partnership debts he has such a lien as against his partner, and as to partnership creditors it would not avail him. The provision for insurance on the stock, and the assignment of the policies to the creditors, is not an uncommon one, and is intended merely as further security. So the provisions regulative of the conduct of the business that Jones should not pursue a speculative business nor contract to sell refined oil without having first secured the crude materials for the manufacture of the same. These, as well as the stipulation that the posting of the books should be done by persons satisfactory to Bidwell and Phipps, and that they should be open to their inspection, were evidently intended for their better security. We do not say, for the evidence in the case does not render it necessary, that if all these provisions had been known to Irwin & Co., the plaintiffs, and it had been shown that

[Irwin v. Bidwell.]

they gave credit to the defendants as partners on the faith of them, it would not have been such a holding out to the world as partners as would have made them liable as such.

Had the consideration of the contract been anything else than an advance of money to be invested as capital in the business, the idea that it created a partnership would hardly have occurred to any one. Had Bidwell and Phipps undertaken to render their personal services in the business, to be paid for at so much per barrel of oil refined—had they been producers of oil and sold their crude products to Jones to be paid for in the same way—had they been the owners of the store in which the business was carried on, and demised it for a rent or consideration to be ascertained by the amount manufactured or sold—the case would not have admitted of an argument, for authorities in abundance could have been produced which settle it. A landlord who demises to a tenant on the shares—who lets a tavern or a colliery—as well as a clerk or salesman who gives his attention and services on the same terms, have often been decided not to be liable as partners: Parsons on Partn. 144; Heckert v. Fegely, 6 W. & S. 139; Dunham v. Rogers, 1 Barr 255; Perrine v. Hanninson, 6 Halst. 181; Putnam v. Wise, 1 Hill 284; Blue v. Leathers, 15 Illinois 31; Chase v. Barrett, 4 Paige 148; Bowyer v. Anderson, 2 Leigh 550; Tibbatts v. Tibbatts, 6 McLean 80.

It only remains to advert to the argument founded on the supposed effect of the stipulation in the contract by which Bidwell and Phipps had the option to become partners at any time before January 1st 1870. If they should so elect, their advances were then to be considered as capital invested by them from the beginning, and they were to participate in the profits to the extent of three-tenths, and to be liable for debts and losses. Upon what principle this could make them partners before they actually exercised the option by electing to become members of the firm, it is not easy to comprehend. An agreement between parties to become partners at a future time will not make them such; an inchoate partnership must be complete before liability can attach, as has been expressly ruled in Howell v. Brodie, 6 Bingh. N. C. 44, 37 English Common Law Rep. 272, and the very point in the case of such an option as was here reserved was decided in Gabriel v. Evill, 9 Meeson and Welsby 295; in which Lord Abinger said: "The defendant clearly was not a partner until he had exercised the option given him of declaring himself such. He never had a right to an account of the profits of the concern."

Judgment affirmed.