## No. 10,227.

### O. V. GREEND AND HERMAN WEHRMANN VS. CHARLES KUMMEL.— AUGUSTUS CRAFT, WARRANTOR.

1. The fact of a party advancing money to pay the wages of the employees of a commercial partnership, and discharging its other expenses, does not constitute him a partner.
2. The fact that the person, who makes such advances of money, takes the charge and superintendence of the partnership business, and exercises the rights of a proprietor, does not constitute him the owner of the establishment and property, as between himself and the partners.
3. Such acts might be plead as an estoppel against the parties, in a suit with third persons.

APPEAL from the Civil District Court, Parish of Orleans.

Tissot, J.

---

*Aug. Bernau* and *Gibson & Hall* for Plaintiffs and Appellees:

Parties who have associated themselves for the purpose of carrying on a commercial business, may adopt a symbolic firm name representing them collectively, such as, "Standard Music and Photo. Lith. Co." Bates on Partnership, Vol. II, 1147. 7 M. 215, and where in using such a firm name the parties have by consent, on their cards, letters, bill heads, etc., used the "plural," advertising themselves, as printers, publishers' agents, etc., it is an admission that there existed between them a partnership. Bates on Partnership, vol. II, 'p. 1147.

Partnerships may be proved by the oral testimony of clerks, agents or persons who know that the alleged partners have actually carried on business in partnership. Collyer on Partnership § 686, p. 614. And such partnership may be established by showing that the parties spoke of each other as partners. Bates on Partnership, vol. I, p. 1143, quoting 20 Me. 367 ; 20 Me. 264. 267 ; 10 Mo. 170; §1151; also Collyer on Partnership § 775 and authorities p. 675.

Evidence that a person advertised for a partner, and that the defendant made some business arrangements with him tends to show a partnership. Bates' Law of Partnership, vol. II, p. 1150, (quoting 44 Mich. 192, etc).

Partnership may also be evidenced by informal documents, as for example, a series of letters, etc. Lindley on Partnership (Ewell) vol. I, pp. 92 and 93.

Partnership books are evidence of the existence of a partnership where the same has been kept in the name of a partnership. The entries in the books are only *prima facie* evidence of the correctness of the accounts therein contained. Bates on Partnership, vol. I, 978, 979 and 981 (quoting Cal. 105. etc.). The entries in such books can at all times be explained, a *fortiori*, where the person sought to be estopped. pleads error or fraud.

Contracts by one partner clandestinely made in the name of one of the partners, are under the law deemed for the benefit of the firm. Bates on Partnership, vol. I, p. 305 and authorities. Collyer on Partnership, § 178, 179, 180, pp. 160–170.

Courts of Justice have the power to appoint Liquidators, 2 Ann. 87 ; 11 Ann. 264. Exclusion of a partner, is sufficient cause for such an appointment. And in appointing a receiver

the guilty partner will not be appointed. Bates on Partnership, vol. I, 986, 998, vol. I, § 591; 1003. Collyer on Partnership, § 354, p. 322. Lindley on Partnership, vol. II, 1010, 1011, etc. High on Receivers. Beach on Receivers.

When parties adopt the form of a bill of sale with the right of redemption, to secure by pledge of movable property the payment of a note, a default in the payment will not vest ownership of the property in the holder of the note. 5 Ann. 99; 12 Ann. 527; 31 Ann. 348; 32 Ann. 949; 36 Ann. 100; 38 Ann. 154.

### *T. Gilmore & Sons* for Defendant and Appellant:

1. Where a partnership is claimed in a business and the evidence fails to show how long it was to continue, who was to furnish the capital. whether any, and if so, what interest was to be allowed, and in what proportion the profits were to be divided, and where consent is wanting, there can be no partnership. Rev. C. C. Arts. 2801, 2805; 14 Ann. 539; 11 Ann. 278. Story on Partnership, p. 4, § 2. Lindley on Partnership, pp. 7 and 8.

2. A sale of certain movables in full ownership and allowing the vendor the right of redeeming them within a certain specified time on the payment of a certain stipulated sum is a *vente a réméré*, and on the failure of the vender to redeem the property within the time specified, the title of the purchaser to the property becomes absolute. Rev. C. C. Arts. 2570, 2567; 30 Ann. 185; 36 Ann. 464; 38 Ann. 271.

  A sale subsequently made by the purchaser of all his right, title and interest in the same movables is a valid one, and carries with it the full ownership. Such a sale is one involving warranty.

  The judge of the lower court is without the power to appoint a liquidator without security, without the assent of all the parties. 4 Rob. 622; 11 Rob. 433; 16 Ann. 238; 35 Ann. 600.

### *Bemiss & Simonds* for Warrantor and Appellee:

A sale of "all right, title, interest and ownership, as well as all claims," to certain property, when accompanied by such evidence of those claims as to put the purchaser on inquiry as to their extent, and in the absence of any representations by the vendor, tending to mislead the purchaser, includes only such interest as the vendor actually possessed. C. C. 2501, 2502, 2517, 2521, 2522; 15 Ann. 65.

A partnership is a contract, and can only be established by the consent of all the parties. C. C. 2801. 2895, Story on Partnership, chap. 1, p. 2. § 2.

Any agreement as to partnership between the purchaser of the interest of one of the partners, and the remaining members of the firm, is a new contract in which the retiring partner has no interest.

The sale of his interest by one partner cannot bring the purchaser of that interest into the partnership. C. C. 2806; Story on Partnership, chap. i. p. 6, § 5; chap. xiii, p. 457, § 307 and 308.

---

The opinion of the Court was delivered by

WATKINS, J. The litigated question in this case is whether or not a partnership exists between the two plaintiffs and the defendant.

The claim of the plaintiffs is that during the fall of 1886 they formed a partnership, for the purpose of lithographing and publishing music, in the city of New Orleans.

That for many years previous thereto, Wehrmann had been engaged in that business in this city, and was, at the time of forming said part-

nership with Greend, the owner of $2500 worth of material, tools, engraving and paraphernalia, and sufficient machinery to operate the business.

All of this and his professional skill, he invested in this partnership, against Greend's $600 and his skill as a lithographer, engraver, specialist in zinc-etching, and music printing and publishing.

Being desirous of enlarging their business, they ordered from Leeds, England, a lithographic power press, the prime cost of which was about $2300, on which they had advanced $600, borrowing $1710 due, thereon.

Not being in funds to pay this balance and the expenses necessary to carry it into their establishment, they secured a loan from Augustus Craft, for that purpose, and for this sum Wehrmann executed his three months' note, secured by a pledge of all of the effects then in the establishments, and the press not yet received.

That Henry Baker having just concluded negotiations with them to take an interest in the partnership, Craft purchased Baker's right, through Wehrmann, and took his place; and, thereafter, from time to time, he invested $3000, additional money, in the business.

That before Baker became a member of the firm, it was conducted in the firm name of Wehrmann & Co., but when Craft became a partner, it was changed to "Standard Music and Photo-Litho. Company."

That on the 1st of April, 1887, he sold his right, title and interest in the partnership and property, to the defendant, who continued in the business with petitioners, and invested additional capital — he being possessor of large means, and no knowledge of the lithographing business.

They aver that, on the 28th of October, 1887, during the absence of Greend, the defendant violently ejected Wehrmann from the premises, and locked it, and has prevented their re-entry, since.

Kummel denies the existence of a partnership, but avers that, upon the plaintiffs' representations that the business was a profitable one, and would prove to be a good investment, he purchased from Craft, on the 1st of April, 1887, for the price of $4973 30 "a certain lot of machinery, "tools, stones, and other articles necessary and useful for the purpose "of carrying on the lithographic business," in the premises No. 48 Bienville street.

He further avers that he "continued in said business, employing the "plaintiffs as workmen and operatives in said business, until the 28th of "October, 1887, when, it proving unprofitable, he discontinued it."

That, in the course of said business, he expended, in addition to the price he paid Craft, almost $500. He cites Craft in warranty, to defend the suit.

Craft's position is that he was the holder of certain claims against the plaintiffs, including Wehrmann's note for $1760, a bill of sale to the effects in their establishment, and, upon being informed by them that they had found a man who would buy out all of his rights and claims, he sold to the defendant, at their request, only such rights as he had.

He denies that he was ever a partner of the plaintiffs, has any interest in the suit, or that he is bound in warranty to the defendant.

On these issues the parties went to trial, and from a general judgment in favor of the plaintiffs and warrantor, the defendant has appealed.

Upon a most careful examination of the record we have found the following facts, viz.:

The partnership between the plaintiffs was formed in the early part of the fall of 1886, and, with a view of enlarging their business, they obtained a loan from Augustus Craft, of $1750, for which Wehrmann executed his note, and secured the same by a pledge of the property and assets of the partnership, and of the lithographic power press, which they contemplated buying, and did buy, with the money they had borrowed of Craft.

This transaction took place on the 10th of November, 1886.

On the 23d of December following there was a new contract of partnership entered into between the plaintiffs and H. H. Baker, wherein it was stipulated that they associated themselves in the lithographing business, in this city, for a term of three years, and were to share profits and losses equally. Wehrmann delivered, as his share of the stock, $600 out of certain tools, stones, materials, etc., valued at $2500; Greend delivered the sum of $300; and Baker agreed to furnish his services, commercial standing, knowledge and influence, which were valued at $600, and which he delivered as stock.

Owing to the value of his materials, tools, stones, etc., being in excess of his subscribed capital by the sum of $1900, that sum was placed to his credit on the books of the partnership.

Just here the chief contention arises, and that is with regard to the relations which subsisted between this partnership and Craft, from its formation to the 1st of April, 1887, when a transaction occurred between him and the defendant. The two plaintiffs, as witnesses testify that, soon after, or about the time of Baker's becoming a member of the partnership, Craft took his (Baker's) place, and, thereafter, continued to be a member of the membership; and, as a conclusive circumstance in sup-

port of their theory, they cite Craft's expenditures of various amounts of money for account of the firm, for a piano, a gas machine, and lithographic press, etc., and aggregating about $3000, and without security. On the other hand Baker states, as a witness, that he continued in the partnership for about one month, and, becoming dissatisfied with the prospects of the enterprise, and being much occupied with other business engaments, he determined to sell his interest and withdraw therefrom; and he accordingly sold his interest to Wehrmann for $280, for which sum he executed his note.

Craft testifies that he never thought of such a thing as becoming a partner of the plaintiffs; that he did not purchase Baker's interest, and never had an interview with him on the subject. He says that it is true he expended various sums for the plaintiffs' account, at different times, prior to the 1st of April, 1887, and in addition to the sum he loaned them on the 10th of November, 1886, but that was done because he felt constrained to make these expenditures in order to save the sum first advanced. On this evidence we are bound to conclude that the relations which existed between the plaintiffs and Craft were those of debtor and creditor, and not those of partners.

On the 1st of April, 1887, by a notarial act, Craft conveyed to the defendant "a certain lot of machinery, tools, stones, and other articles " necessary and used for the purpose of carrying on the lithographic " business," being situated in the premises No. 48 Bienville street, for the consideration of $4973 30; of this there was $1000 paid in cash; and for the remainder, of $3793 30, he executed his note, due at thirty days, and same was indorsed by the plaintiffs.

It is under this document that plaintiffs insist that the defendant took Craft's place in every respect, and became a member of the partnership, which was styled the "Standard Music and Photo-Litho. Company," and so continues to the present time; it is under this instrument that the defendant claims exclusive ownership of all the property of the establishment; and it is in virtue thereof that the defendant calls Craft in warranty.

Again the two plaintiffs swear to the existence of a partnership between themselves and Kummel, in the business, as well as in the property.

This is just as emphatically denied by the defendant.

There is nothing in the act to indicate the purpose of the defendant to become a partner of the plaintiffs. Neither of the plaintiffs were parties to the act. It only purports a conveyance of the rights, title and inter-

est of Craft to the defendant of certain specified property, and nothing more.

In the elaborate testimony of the respective parties and their witnesses, various circumstances are enumerated in support of the respective theories of each, without convincing us of the correctness of either. While it is true that under this act the defendant assumed control and general superintendence of the business and establishment, and performed many acts of apparent ownership, we are inclined to view them rather as acts of administration. He had purchased the claims of Craft upon representations of the plaintiffs that the business was sure to be a profitable one, and was a safe investment for his money, and, as a prudent financier, he was diposed to look after it closely.

It is true that he expended a large sum of money in the wages of employees, and in other expenses, and necessary disbursements of the concern, but it appears to us quite reasonable that this should have been anticipated by him, inasmuch as his associates were confessedly without means to move the business. Indeed, it is in proof that the plaintiffs had more than one interview with the defendant on the subject, and induced him to purchase the interest of Craft.

Craft testifies that he was not acquainted with Kummel, and was introduced to him in the notary's office on the day of sale.

On the other hand there are several witnesses, of first respectability, who testify that, at various times, and in various ways, both Greend and Wehrmann acted as proprietors, down to the date the establishment was closed; and others testify that they were introduced to the defendant, by Greend or Wehrmann, as their partner, without his disapprobation.

These, at best, are but circumstances; they cannot, of themselves establish either a partnership inter sese, or ownership. If some third persons had right which were involved, they might be successfully urged against the parties as an estoppel; but they cannot take the place of a contract of partnership or of a sale between the parties.

Our conviction is that the defendant was permitted to take the superintendence and principal management ot the business because they had confidence in his financial ability, but that they continued to remain the owners of the establishment and property, subject, of course, to the valid claims of the defendant as a creditor.

Under this view of the case the judgment of the lower court must be reversed.

It is therefore ordered and decreed that the judgment appealed from be annulled and decreed; and it is now ordered and decreed that the

State vs. City of New Orleans.

demands of the plaintiffs be rejected at their cost in both courts—the rights of all parties being fully reserved.