(33 South. 563.)

No. 14,478.

RICHARD v. MOUTON et al.

(Jan. 19, 1903.)

CONTINUANCE—REFUSAL—PARTNERSHIP—
DISSOLUTION—POWER OF PARTNERS
—ACCOUNTING—COSTS.

1. Where courts of first instance refuse continuances or further hearings, it is sometimes found that the discretion vested in them has not been properly exercised; but where a further hearing has been granted, either before judgment or by new trial, afterwards, with a view to the obtention of information needed for the purposes of a correct decision, there is no just cause for complaint.

2. A member of a partnership who is authorized by his copartners to make all sales, receive all payments, handle and disburse all funds of the concern, and keep its accounts, owes it to them and to himself to keep such accounts correctly and intelligibly, and to render statements thereof when properly called on for the same. He should not mingle the funds of the firm with his own, nor with those of another firm of which he is a member.

3. After the dissolution of a commercial partnership, one of the members, not specially authorized to that effect, cannot bind the others for the costs of an expensive and fruitless lawsuit brought by him; and especially is this so when they have objected to it in advance.

4. Where a partner who is authorized to make all sales and receive and disburse all money for his firm, and to keep its accounts, is called on, after its dissolution, for a settlement, it is not sufficient, to entitle him to a credit with respect to the price of property sold by him, that he should enter upon his account the name of the purchaser. He must show why he has not collected the money, or he will be charged with it. And in such a case, where it appears, after the dissolution of the firm, that he withholds the funds, denies to his copartners an account of his gestion when requested to furnish the same, and, when sued, renders an account which is incorrect, he will be condemned to pay the costs of the litigation if the balance is eventually found to be against him.

(Syllabus by the Court.)

Appeal from judicial district court, parish of Vermilion; Minos T. Gordy, Jr., Judge.

Action by Othon Richard against Eraste Mouton and another. Judgment for defendants, and plaintiff appeals. Modified.

L. L. Bourges and W. B. White, for appellant. Edwards & Greene, for appellees.

MONROE, J. Upon a former hearing, and after the ruling of the district court, to the effect that it might stand as a suit for settlement of partnership, had been affirmed, this case was remanded, in order that the transcript and the process by which the judgment appealed from had been reached might be made intelligible.

Upon the last hearing the district court rendered a judgment, which reads, in part, as follows:

"The above-entitled * * * case having been remanded * * * for further proceedings according to the views as set forth in the opinion of the Supreme Court, * * * and the court here having complied with said decree, and filed its reckoning of partnership account, * * * it is * * * ordered, adjudged, and decreed that said account be amended by increasing the net profit thereof, and the amount to be distributed between the partners, by the sum of $712.40, for which said Eraste Mouton is to account to the partnership, and making the sum of

$1,348.30 which he is to divide between the partners."

From this judgment the plaintiff has appealed, and the defendant Mouton answers the appeal, alleging that the account filed by him is correct, save as to one item, and praying for an amendment accordingly. The plaintiff has moved that the transcript of the former appeal be used in connection with the transcript of the present appeal, and this court has so ordered. Taken together, the two transcripts present the following case, viz.:

Upon the 2d of April, 1898, the plaintiff and the two defendants, Mouton and Trahan, entered into a contract of partnership for the buying and selling of cattle; it being agreed that the capital should be furnished, and the profits and losses divided, in equal proportions. It was also agreed that the capital, as originally furnished, should be placed in the hands of Mouton; that he should sell and ship the cattle purchased therewith in his own name, receive the proceeds of the sales, furnish therefrom the money wherewith to buy other cattle, keep the books, and account to his copartners from time to time.

The firm began business by obtaining a loan of $3,000 from the bank at Abbeville, which amount, less, as we understand the testimony, a discount of $122, was placed to the credit of Mouton April 4, 1898. Instead, however, of keeping a separate account of this money, Mouton, who, during the existence of the firm, was engaged in the same line of business as that for which the partnership with Richard and Trahan was formed, as the partner of one Nugier, besides having other business of his own, used it indiscriminately for all those purposes.

The buying and selling of cattle began immediately after the negotiation of the loan referred to, and, as the sales were made by Mouton alone, he alone knew whether particular shipments resulted in profit or loss. He, however, rendered no account to his partners, although repeatedly requested to do so, either during the existence of the partnership or afterwards, until this suit was filed, when he presented what purports to be a complete statement of the transactions of the partnership, showing a profit resulting therefrom of $635.90, or, say, $211.-

96 for each partner, as against which he charges the plaintiff with $450, and Trahan with $199.75, as drawn by or paid out for them, respectively. It may be remarked in this connection that the partnership terminated about the end of the year 1898, and that this suit was not filed until June 27, 1900, so that, according to his own showing, Mouton has been withholding for 18 months a small balance which he now admits to have been due to his codefendant, Trahan; and this notwithstanding that the latter, as well as the plaintiff, has more than once demanded a settlement.

The plaintiff opposes the account thus filed, and the judge a quo, as we have seen, has found and decreed that the profits of the partnership were greater, by $712.40, than as appears therefrom. In the course of the proceedings leading up to the judgment so rendered, and after the case had been taken under advisement, the following order was made, to wit: "* * * The court having reached the conclusion that, owing to the unsatisfactory and uncertain and negative character of the evidence on the part of both the plaintiff and the defendant, it is impossible to render a judgment which would do justice to all concerned, the court therefore orders, ex proprio motu, that the case be reopened; granting to the parties the right to offer additional evidence."

To this ruling the counsel for the plaintiff excepted, and they insist in this court that the judge erred in reopening the case, and that it should now be decided upon the evidence which had been previously adduced. We cannot concur in this view. Where courts of first instance refuse continuances or further hearings, it is sometimes found that the discretion vested in them has not been properly exercised; but where a further hearing has been granted, either before the judgment, or by new trial afterwards, with a view to the obtention of information needed for the purposes of a correct decision, there is no just cause for complaint. In the case of Sowers v. Sheriff, 15 La. Ann. 300, to which we are referred, the syllabus reads: "Evidence called for ex officio by the judge after the cause is submitted and under advisement is unauthorized, and will be disregarded on appeal." The

matter is not, however, mentioned in the opinion, and it seems likely that the trial judge in that instance, after taking the case under advisement, heard testimony or received evidence without affording the litigants an opportunity to participate contradictorily with each other in the proceedings. The instant case, upon the other hand, was regularly set down for hearing, and both the parties were afforded the same opportunity with respect to the additional evidence offered and received. The plaintiff's objections were therefore properly overruled.

Upon the merits, whilst it appears that the defendant is not an expert bookkeeper, and that the plaintiff was aware of that fact, and whilst it was not to have been expected, and was unnecessary, that he should have kept a regular set of books, including a daybook, journal, and ledger, it was nevertheless incumbent on him in some way to have kept a correct and intelligible account of the transactions in which he and his illiterate partners were interested, and of the money which, for their account and his own, went into his hands. And this he has not done, for the account filed by him is neither correct nor intelligible. Dealing with it, so far as may be, from the point of view taken by the judge a quo, we find that in two items the defendant credits himself with $11,226.55, as having been paid for cattle sold in New Orleans, and charges himself with $12,660.38 as the proceeds of such sales. As the account furnishes no details of the transactions involving these large sums, and is equally deficient as to others, the plaintiff, by subpoena duces tecum, called on the defendant for his books, bills of lading, account sales, etc., from which it was supposed that more specific information could be obtained. To this the defendant replied by furnishing what purports to be a statement (called "Statement A") from his consignee in New Orleans, showing receipt and sale of different lots of cattle between June 6, and September 28, 1898, and made up of items such as the following, viz: "June 6. Net Proceeds. 46 head. $600.40," etc.; the aggregate amount received, as thus shown, being $13,147.31. He, however, says, in his sworn return, that there is included an item of $486.93 for "61 head," representing a shipment of calves which did not belong to the partnership; and deducting that amount from the aggregate, of $13,147.31, as shown by the statement, he finds the aggregate of $12,660.38, as shown by his account. Further than this, the defendant furnishes what purports to be a "daybook," in which the transactions of the partnership are said to have been entered, and he says in his return "that it is impossible for him to produce any book, or books, or account sales, or bills of lading, showing the number of cattle bought and sold for the partnership, * * * and the prices paid therefor, together with expenses incurred in said business, other than said daybook and said statement of cattle sold in New Orleans, marked 'A,' for the following reasons." And he goes on to say that the business of the partnership was entered in no other book; that the statement A is a correct, condensed statement of all the cattle sold in New Orleans (except as to the 61 calves); and that he preserved no account sales, bills of lading, or other papers connected with the business.

The plaintiff thereupon called upon the railroad agent for his books, and, whereas it appears from the Statement A that (deducting the item representing the 61 calves) the defendant had shipped to New Orleans 756 head of cattle, it appears from the books thus called for and produced (and after making a like deduction) that he had shipped 983 head, and that he fails to account for 227 head of cattle, representing, in profits (at $1.89 a head, the basis established by his account) the sum of $428.93.

These figures, which vary but slightly from those found by the judge a quo, are supported by collateral evidence. Thus, whilst the defendant was operating under his contract with the plaintiff and Trahan, he was also operating, apparently to their knowledge, and without objection from them, in partnership with Aubrey Nugier in the buying and selling of calves. Nugier, placed on the stand as a witness for the defendant, testifies that he kept an exact record of the number of animals shipped by the defendant for account of the firm of which he was a member, and that there were between 900 and 1000 head. The railroad books show the shipment of 917 calves and yearlings, to which, adding the 61 shipped as cattle, and

we have 977, so that the calves are all accounted for, and, as we shall see, more than accounted for, without impinging upon the cattle account, from which it follows, since it is not pretended that the defendant was a member of a third firm, or that he was operating in calves or cattle on his own account, that the 983 head of cattle shown to have been shipped by him must have been shipped for account of the firm of which plaintiff was a member.

It would, however, make no difference, for the purposes of the present inquiry, whether, in point of fact, they were so shipped or not. The defendant, having entered into a partnership with the plaintiff and Trahan for the buying and selling of cattle, was not at liberty to engage in that business for his own account, or with any one else, and whilst it may be, though it is none too clearly proved, that the plaintiff knew that he was engaged with Nugier in buying and selling calves, and did not object to it, there is no suggestion that he knew or acquiesced in his trading in cattle otherwise than as a member and for the benefit of the partnership into which they had entered for that purpose. And this brings us to another question.

Nugier, as has been stated, was the defendant's partner in the calf trade. He was put on the stand, after the case had been reopened, as defendant's witness. He stated that he had kept a record of the shipments in which he was interested, and that he had the record in his possession, but he was not called upon to produce it. He also testified that cattle were not unfrequently shipped with calves. Being asked about how many head of cattle were so shipped, he said: "I don't suppose, all together, there were over 75 or 100; that is, that Mr. Mouton shipped with those calves."

The judge a quo held that the defendant should account to the firm of which the plaintiff was a member for the profits on the cattle thus shipped, and, upon the basis of Nugier's testimony, fixed the number at 75. In view, however, of the fact that the witness had been called by the defendant, and was in sympathy with him; that he and the defendant had it in their power to give the exact number of cattle shipped; of the improbability of his having overstated the number; and of the further fact that the funds and credit belonging to the business in which the plaintiff was interested were used for such shipments—we think it would be neither unsafe nor unfair to accept the higher number stated by the witness, rather than the lower, as the correct one, and to hold that defendant should account in this suit for the profit on 100 head of cattle at $1.89 per head.

In the account filed by him, the defendant credits himself with "Balance due by J. O. Nicholas, $1,178.23," and "Costs of suit of J. O. Nicholas, $204.25." Nicholas is a person to whom the defendant sold cattle, and the two items mentioned are supposed to represent the unpaid balance due by him on that account, together with the attorney's fees and costs expended in a fruitless effort to recover the same. It is admitted that the balance alleged to be due is overstated by $143.51; the fact being that in March, 1899, the defendant Mouton brought suit in his own name against Nicholas, alleging that the balance due was $1,034.72. The plaintiff alleges that the partnership between him and the defendant was dissolved in November, but the evidence upon the subject, including his own, is somewhat conflicting, and fails to make it clear that there was any definite understanding to that effect prior to the 15th of December. It is, however, conceded by all that it did not last beyond the date last mentioned. Under these circumstances, and as the defendant was not authorized to involve the plaintiff, who was no longer his partner, in a fruitless and expensive lawsuit, it is clear that the latter cannot be charged with the costs of the same; and especially is this the case, since both the plaintiff and Trahan testify that they objected to the bringing of the suit. The item $1,178.23 must therefore be reduced by $143.-51, and the item $204.25 must be stricken from the account.

The defendant has credited himself with "Amount due by Thibeaux, $40.00," which, it appears, represents an unpaid bill for cattle sold. But it is not shown that it could not have been collected, or that any effort to collect it has ever been made. The credit should therefore be disallowed.

The plaintiff is charged $25 for a cow, but he testifies that the animal was old and was

not worth the money, and no other witness has testified who had any personal knowledge of the matter. This item should be reduced to $16.

The account filed by the defendant is therefore to be amended to the following effect:

| | | |
|---|---:|---:|
| Balance of profit, as shown by account | $635 90 | |
| Less deduction for overcharge on cow sold defendant | 9 00 | |
| | | $ 626 90 |
| Amount to be added for cattle shipped to New Orleans and not accounted for | | 428 93 |
| Amount to be added for cattle shipped with calves for account of Mouton & Nugier.. | | 189 00 |
| Amount to be added by reason of overstatement of balance due by Nicholas | | 143 50 |
| Amount to be added by reason of error in charging firm with costs, etc., of suit against Nicholas | | 204 25 |
| Amount to be added by reason of error in charging firm with debt due by Thibeaux | | 40 00 |
| | | $1,632 59 |

And the amount charged to the individual account of the plaintiff is to be reduced from $450 to $441.

The defendant, holding in his hands the entire funds of the partnership, and using them for his own purposes, having in his possession the information necessary to enable him to account for those funds, which had been received in the course of business transacted by him for the firm, failing to account when called on, and finally, when brought into court, rendering an account which is found to be incorrect, and which, when corrected, shows that he owes money to his partners which he ought to have paid long ago, has no right to expect that the balance due to his partners should be reduced by deducting therefrom the costs of the proceeding necessary to its ascertainment.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be amended by increasing the amount found to be due by the defendant Mouton, as the net profit remaining in his hands of the business in which he and the plaintiff and Columbus Trahan were engaged as commercial partners, from $1,348.30 to $1,632.59, and by condemning the said defendant Mouton to pay to the plaintiff the sum of $103.19, as the balance due plaintiff from said amount, with legal interest from judicial demand, together with all the costs of this litigation, and that as thus amended said judgment be affirmed.