## COMMISSIONER OF INTERNAL REVENUE v. OLDS.

### No. 5853.

Circuit Court of Appeals, Sixth Circuit.

June 29, 1932.

HICKS, Circuit Judge, dissenting.

Morton K. Rothschild, of Washington, D. C. (G. A. Youngquist, Asst. Atty. Gen., and Sewall Key, C. M. Charest, and Frank M. Thompson, all of Washington, D. C., on the brief), for petitioner.

Maxwell W. Benjamin and C. F. Stanton, both of Detroit, Mich. (Raymond H. Berry, of Detroit, Mich., and E. Barrett Prettyman and Fred Gibbs, both of Washington, D. C., on the brief), for respondent.

Before MOORMAN, HICKS, and SIMONS, Circuit Judges.

MOORMAN, Circuit Judge.

The question for decision in this case is whether an agreement which respondent made with his three daughters constituted a partnership within the meaning of section 218(a) of the Revenue Acts of 1918 and 1921 (40 Stat. 1070, 42 Stat. 245).

The respondent conducted a dock and timber business in Cheboygan, Mich. He had three daughters, one married and two unmarried. Desiring to train his daughters in the handling of large sums of money, and wishing to divide his property during his lifetime so as to avoid any family disputes after his death, in December of 1918 he entered into a written agreement to sell to each of them a one-fourth interest in everything he owned. Upon the execution of the agreement each of the daughters executed to the respondent her promissory note for $400,-000, payable on demand without interest. It was stipulated in the agreement that the business should be conducted by the respondent "in his name" or in any other name that he might choose; that the daughters should draw out of the profits of the business only such amounts as he saw fit to pay them and as they might "need for their living and comfort during his lifetime"; that they should have "the privilege of looking over the books of the company" and "everything pertaining to the business" at all times; and that, if at any time any one of them should become dissatisfied with the way the business was being conducted or should think her interest was being impaired, he would return to her her note and take over her interest.

Upon the completion of the agreement, entries were made on the books of the business debiting the respondent and crediting the daughters with the amounts represented by the notes. During the year 1919 further entries were made showing that a fourth interest in the business had been transferred to each of the daughters. In that year and the succeeding years withdrawals of profits were debited to the parties receiving them, with the result that at the close of each of these business years the books showed net balances in favor of the parties in different amounts. Upon these facts, found more in detail than herein stated, the Board concluded that a bona fide partnership was entered into, and determined the taxable income of the respondent for the years here involved—1919, 1920, and 1921—in accordance with the provisions of section 218(a) of the Revenue Acts of 1918 and 1921.

■ The Commissioner contends that the agreement did not constitute a partnership within the meaning of the section of the Revenue Act referred to, and, subsidiarily, that the Board of Tax Appeals erred in receiving evidence of the purposes of the respondent in making the agreement, the negotiations with his daughters with reference thereto, and the entries on the books and accounts of the business after the agreement was made.

There is nothing in the evidence complained of which violates the rule that parol evidence is not admissible to vary the terms of a written contract. The agreement is not one which is to be interpreted as though there were a suit against the parties thereto by a third party, but is to be considered as an agreement inter' se, which agreement the Commissioner contends was not entered into for the purpose of forming a bona fide partnership. Where the good faith of such an agreement is assailed, it is obviously permissible to show the reasons actuating the parties in making it; indeed, one of the tests of a partnership relation, as between the parties, is the intention that a partnership be formed. London Assurance Corp'n v. Drennen, 116 U. S. 461, 6 S. Ct. 442, 29 L. Ed. 688. The agreement here involved, though made in Ohio, was to be performed in all of its details in Michigan, where the business was located. In that state the question of partnership, as between the parties, is one of intention to be gathered from all the facts and circumstances. Bird v. Hamilton, Walk. Ch. 361; Beecher v. Bush, 45 Mich. 188, 200, 7 N. W. 785, 40 Am. St. Rep. 465; Canton Bridge Co. v. Eaton Rapids, 107 Mich. 613, 65 N. W. 761; Morrison v. Meister, 212 Mich. 516, 519, 180 N. W. 395; Klein v. Kirschbaum, 240 Mich. 368, 371, 215 N. W. 289. Whatever may be the rule elsewhere as to the reception of evidence touching this question, we cannot doubt that the Board of Tax Appeals, in seeking the true purpose of the agreement here in question, had the right to receive evidence that would be admissible in the courts of the state where the contract was to be performed. See Pritchard v. Norton, 106 U. S. 124, 136, 1 S. Ct. 102, 27 L. Ed. 104; Supreme Lodge, Knights of Pythias v. Meyer, 198 U. S. 508, 517, 25 S. Ct. 754, 49 L. Ed. 1146. Under the rules of evidence in Michigan, the conversations between the parties leading up to the signing of the agreement, including their orally expressed purposes in that connection, were admissible in evidence as tending to show that the agreement was a partnership agreement.

■ The agreement was executory in form. In order to transform it into an executed one, and thus call the partnership into being, it was necessary that the parties do the things that they agreed to do, that the daughters execute and deliver to the respondent their respective notes, and that he transfer to them the property interest he had agreed to sell. Beckford v. Hill, 124 Mass. 588, 589; Baldwin v. Burrows, 47 N. Y. 199, 208; Irwin v. Bidwell, 72 Pa. 244, 251. The daughters evidenced their performance by executing the notes. The respondent signalized his by causing entries to be made on the books of the business showing that each of the daughters owned a fourth interest. This act, as well as subsequent acts of a like nature, were plainly admissible to show that the agreement was executed.

■ It is contended that the agreement is invalid because it does not permit the daughters to withdraw their share of the profits without restraint. In our opinion, it is not essential to the validity of a partnership agreement that the rights of the partners as to the control of the business or the disposition of profits be equal. It is within the power of the parties entering into a partnership agreement to restrict the rights of the several partners to the extent of making one of them the sole agent of the others for conducting the business. Beecher v. Bush, supra. They may also agree that profits shall not be distributed but put back in the business, or shall be distributed only upon the happening of a specified event or as authorized by the partner in charge of the business. Compare Haller v. Willamowicz, 23 Ark. 566; Richard v. Mouton, 109 La. 465, 33 So. 563; Greend v. Kummel, 41 La. Ann. 65, 5 So. 555; Gill v. Crosby, 63 Ill. 190; Chapin v. Streeter, 124 U. S. 360, 8 S. Ct. 529, 31 L. Ed. 475.

■■ Nor in our opinion was the agreement rendered invalid by the undertaking of the respondent to repurchase upon the dissatisfaction of the daughters. Partnership agreements can be created only by contract, either express or implied. Dunham v. Loverock, 158 Pa. 197, 27 A. 990, 38 Am. St. Rep. 838. In the absence of statutory inhibitions, they are governed, as between the parties, by the principles applicable to other contracts. There are many cases holding that contracts making fulfillment depend upon the satisfaction of one of the parties are

valid. Where the fulfillment is denied in such cases, the test of its sufficiency is the good faith of the dissatisfaction. Williston on Contracts, vol. 1, p. 74; Goltra v. Weeks, 271 U. S. 536, 548, 46 S. Ct. 613, 70 L. Ed. 1074. See, also, Mills-Morris Co. v. Champion Spark Plug Co., 7 F.(2d) 38, 39 (6 C. C. A.); Morrissey v. Broomal, 37 Neb. 766, 780, 56 N. W. 383; Over v. Byram Foundry Co., 37 Ind. App. 452, 77 N. E. 302, 117 Am. St. Rep. 327. The contract here under consideration is an executed contract of sale. It carries, it is true, an obligation to repurchase for a named consideration if the buyers shall become dissatisfied, not with the contract, but with the way the business is run. Whether the buyers could defeat a suit on the notes or could compel a repurchase would depend, under the authorities cited, upon the good faith of their dissatisfaction. We know of no reason why an executed contract of sale which provides for a repurchase or the return of the purchase consideration upon the occurrence of a designated determinable event is not valid and binding as between the parties, nor why it should not be binding as to third parties. Indeed, we have no doubt that, if this business should fail while the contract is in existence, the separate estates of the daughters, if they have any, could be reached by creditors.

It is not important that the respondent did not intend to require payment of the notes. They were executed and were collectible in his hands except upon a good-faith showing of dissatisfaction. Besides, he had the right to give an interest in his business to his daughters. There is no creditor attacking the transaction, and, if the gift was made in good faith, the taxing authorities cannot complain. Marshall v. Commissioner, 57 F.(2d) 633 (6 C. C. A.). The case is unlike Lucas v. Earl, 281 U. S. 111, 50 S. Ct. 241, 74 L. Ed. 731, or Burnet v. Leininger, 235 U. S. 136, 52 S. Ct. 345, 76 L. Ed. 665. Here the respondent did not undertake to establish a joint tenancy in salaries or fees to be earned or to create a subcontract and convey a part of his earnings from the business to his daughters. He sold or gave to each of them a one-fourth interest in his business, and later, when a part of it was sold for a large amount, they received their partnership share of the proceeds. In such circumstances the Board of Tax Appeals was justified in holding that a partnership existed.

The order of the Board is affirmed.

HICKS, Circuit Judge (dissenting).

The question is well stated in the opinion of the court. The agreement is printed in the margin.[1]

During the year 1918 respondent operated a coal dock and owned certain timber properties and various bonds and stocks. He, with Mrs. Olds, lived at Cheboygan, Mich. He had two unmarried daughters, Blanche and Gertrude, and one married daughter, Mrs. Florence Buhrman, who lived at Dayton, Ohio. During the summer of 1918 respondent conceived the idea of a general business partnership between himself and his daughters. While the family was together at the home of Mrs. Buhrman on December 31, 1918, there was a general discussion upon the subject, unimportant now in view of the written instrument above referred to which was executed by the parties on that date. At the same time the three daughters each executed a note for $400,000 in compliance with the terms of the writing. One of the notes is copied in the margin.[2]

[1] "This Memorandum of Agreement, made and entered into this 31st day of December, 1918, by and between Millard D. Olds of the city of Cheboygan, Cheboygan County, Michigan, party of the first part, and each of his daughters, Edna Blanche Olds, Gertrude Gladys Olds, and Florence Olds Buhrman, parties of the second part.

"Witnesseth, that Millard D. Olds, party of the first part, agrees to sell one quarter interest in everything he owns to each of his daughters, parties of the second part, agreed to buy, giving their promissory note for $400,000.00 each. It is agreed that the business shall be conducted by party of the first part, by him and in his name, or in any other name that he sees fit to use. Parties of the second part are not to draw out any of the profits, only in such amounts as said party of the first part, sees fit to pay them, and as they, parties of the second part, may have need for their living and comforts during his lifetime. Parties of the second part, may have the privilege of looking over the books, and everything pertaining to the business, at any or all times. These notes are to be made for $400,000.00 each payable on demand and without interest.

"*If at any time, either party of the parties of the second part, are in any way dissatisfied with the way said party of the first part, conducts the business, and think that their interest is being impaired by such management, party of the first part agrees to return their notes and take over their interest.*

"In witness whereof, the parties hereto have hereunto set their hands the day and year above mentioned.

"Millard D. Olds
"Edna Blanche Olds
"Gertrude Gladys Olds
"Florence Olds Buhrman"

[2] "Cheyboygan, Mich., December 31, 1918.
"$400,000.00
"On Demand after date without grace for value received, I promise to pay to the order of Millard D. Olds Four Hundred Thousand and no/100 Dollars at M. D. Olds' office, without interest. Due on Demand.
"Gertrude Gladys Olds.
"(Written across the face of the above: 'Paid with renewal note. M. D. Olds')"

The Board decided that a partnership existed between respondent and his daughters, and upon this basis determined respondent's tax liability for the years involved in accordance with the applicable statutes above cited. The court is in accord.

I cannot accept this view.

I have briefly recited the circumstances leading to the execution of the instrument because of its very meager reference to the subject-matter, but their consideration is not required, or, as I understand, allowed, in ascertaining the intention of the parties. The writing, read in connection with the notes, is unambiguous. The "Memorandum of Agreement" is between the father and his daughters. Respondent agreed to sell, and each of his daughters agreed to buy, "one quarter interest in everything he owns." Each daughter agreed to give her note for $400,000 in settlement. I need not discuss other features appearing in the second paragraph which the parties were fully competent to include if they chose to do so.

I think the weakness of respondent's contention is found in the italicized paragraph. Therein the makers of the notes expressly reserved the right to have them returned if at any time or in any way they should become dissatisfied with the way respondent conducted the business and should think that their interest was being impaired by his management. The exercise of this right was to be determined by the independent judgment of the makers of the notes. See Miami Coca-Cola Bottling Co. v. Orange Crush Co., 296 F. 693, 694, C. C. A. 5. This right imposed from the beginning an obligation upon the respondent to return the notes upon demand. The effect was to destroy the notes as enforceable obligations as between the parties and to strip the instrument of all mutuality of engagement. To promise to pay and at the same time to reserve the right to revoke the promise is no promise. The obligation to hold the notes subject to the demand for their return is wholly inconsistent with the idea that the notes were either a promise to respondent or a consideration for the purchase. I think, therefore, that the agreement was void. The obligation to pay the notes was negatived by the reserved right to demand their return.

I think we are not dealing with a contract effective until terminable at will but with a contract invalid from its inception. Velie Motor Car Co. v. Kopmeier Motor Car Co., 194 F. 324, 330, C. C. A. 7; City of Pocatello v. Fid. & Dep. Co., 267 F. 181, 182, C. C. A. 9; U. S. v. White Oak Coal Co., 5 F.(2d) 439, 441, C. C. A. 4; Miami Coca-Cola Bottling Co. v. Orange Crush Co., supra; Bernstein v. W. B. Mfg. Co., 238 Mass. 589, 591, 131 N. E. 200; Rehm-Zeiher Co. v. F. G. Walker Co., 156 Ky. 6, 14, 160 S. W. 777, 49 L. R. A. (N. S.) 694; Hutchinson Baking Co. v. Marvel, 270 Pa. 380, 113 A. 433; Bankers' Trust & Audit Co. v. Farmers' & Merchants' Bank, 163 Ga. 352, 136 S. E. 143; Page on Contracts (2d Ed.) vol. 1, § 572.

A different situation would have arisen if the makers had paid the notes, but they have never done so. The notes were renewed on December 31, 1924, and respondent still holds them.

Section 6 (1) of part 2 of the Uniform Partnership Act adopted in Michigan (Comp. Laws Mich. 1929, § 9846), where the written agreement was to be performed defines a partnership as "an association of two or more persons to carry on as co-partners a business for profit."

Upon the foregoing consideration, I think that respondent failed to establish before the Board by any substantial evidence that any partnership, as contemplated by the Partnership Act or by section 218(a) of the Revenue Acts involved, was ever effected between respondent and his daughters. The parties never became co-owners of respondent's property.

But, aside from all this, I think the matter can be brought into clearer view by the application of a very practical test. See Lucas v. American Code Co., 280 U. S. 445, 449, 50 S. Ct. 202, 74 L. Ed. 538. Suppose we lay aside everything that was spoken or written between the parties and examine the question from the standpoint of what they really did or failed to do. In this light it appears to me that the daughters did nothing of consequence. During the six years intervening between the execution of the agreement and the bringing of this action the daughters neither invested any money in the business nor contributed any service. The record fails to disclose that they even exercised the "privilege of looking over the books." Upon the other hand, respondent managed the business for the whole period exactly as he did before the execution of the agreement, with this one difference: He distributed to them such "profits" as he chose to distribute, taking into consideration their living necessities. But there is no magic in words. Profits imply investment, and there was no investment by the daughters.