OAKLAND MOTOR CAR. CO. v. INDIANA AUTOMOBILE CO.

(Circuit Court of Appeals, Seventh Circuit. October 1, 1912.)

No. 1,891.

1. CONTRACTS (§ 10*)—REQUISITES AND VALIDITY—MUTUALITY OF OBLIGATION.

Defendant, as a manufacturer of automobiles, and plaintiff, as a dealer, entered into a contract by which defendant gave plaintiff for the term of one year the exclusive right to sell its cars in a certain territory, and agreed to sell plaintiff cars at a stated discount from list price; the contract providing, however, that no order should be binding upon it, unless submitted in writing, clearly specifying as to kinds, styles, date of shipment, etc., and accepted by defendant at least 30 days prior to date for delivery. It further provided that it might be canceled by either party "for just cause" on 30 days' written notice. A further provision gave the right to cancel for a violation without notice. By a supplemental clause, added after the signatures, plaintiff agreed to purchase 50 cars from defendant during the term of the contract, and as many more as it could handle and defendant could supply. Defendant gave notice of cancellation for reasons stated, and plaintiff brought action for damages. *Held*, that the right given to cancel "for just cause" was so indefinite as to leave it to the party to determine what was a just cause, and that in view of such provision, and the further one requiring the approval of orders by defendant before they were binding on it, the con-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tract, for lack of mutuality, could not be held one for the purchase and sale of 50 cars, and enforceable, as such against defendant.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 21–40; Dec. Dig. § 10.*

Mutuality in contracts, see note to American Cotton Oil Co. v. Kirk, 15 C. C. A. 543.]

**2. SALES (§ 1*)—REQUISITES AND VALIDITY—UNCERTAINTY OF SUBJECT-MATTER.**

At the time such contract was made, defendant had in the market three models of cars, and had under construction for the ensuing season a number of other styles, at different prices, all of which was known to plaintiff. The contract named only "Oakland Automobiles," which applied to all of defendant's cars, and did not specify, nor bind plaintiff to the purchase of, any particular model or style. *Held*, that it was not enforceable as a contract for future sale and delivery, for lack of any means contained therein for identifying the subject-matter of such sale.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1, 3–5; Dec. Dig. § 1.*]

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois; Kenesaw M. Landis, Judge.

Action at law by the Indiana Automobile Company against the Oakland Motor Car Company. Judgment for plaintiff, and defendant brings error. Reversed.

The Oakland Motor Car Company, plaintiff in error, was defendant below in the suit brought by the Indiana Automobile Company to recover damages for alleged breach of contract. On trial of the issues to a jury, verdict was rendered against the defendant, assessing the damages at $6,500, and reversal of the judgment thereupon is sought under various assignments of error. The contract relied upon for recovery, through rescission thereof on the part of the defendant below, reads as follows:

"This agreement, made and entered into at Pontiac, Michigan, this 16th day of September, 1908, by and between the Oakland Motor Car Company, of Pontiac, Michigan, hereinafter called the manufacturer, and Indiana Automobile Company, Indianapolis, Indiana, hereinafter called the dealer, witnesseth as follows, viz.:

"1. That the manufacturer hereby grants to the dealer the exclusive right of sale of Oakland automobiles and parts thereof in the following described territory, viz.: State of Indiana, south of the southern line of the following counties: Newton, Jasper, Pulaski, Fulton, Kosciusko, Whitley, Allen.

"It is hereby mutually agreed by and between the parties hereto as follows:

"2. This contract is made for the purpose herein set forth only, and does not in any manner delegate to the dealer the right or authority to transact any business or incur any obligations for or in the name of the manufacturer.

"3. The dealer agrees not to solicit sales from or sell Oakland automobiles to any person or persons residing outside of the above-described territory, and further agrees to refer any inquiry coming from outside of such territory to the manufacturer.

"4. The dealer agrees faithfully to represent and advertise Oakland automobiles and promote the sale thereof to the best of his ability in the territory assigned, and to sell at not less than list price to the user.

"5. The manufacturer will sell to the dealer Oakland automobiles, automobile bodies and chassis at a discount of 25 per cent. from the list price thereof, f. o. b. cars, Pontiac, Michigan, for cash in par funds, it being under-

stood that all orders shall be accompanied with a deposit of 20 per cent. of the list price of automobiles, automobile bodies or chassis, and that draft· for the balance of the price thereof shall accompany the bill of lading, and that the title to these goods shall remain in the name of the manufacturer until full payment of the purchase price is made, and that the dealer shall make prompt payment on the arrival of such goods at destination on the foregoing basis.

"6. The dealer agrees that he will not hold the manufacturer liable on account of any other dealer selling said automobiles in the territory assigned, but the manufacturer will endeavor so far as possible to protect the interests of the dealer in said territory.

"7. The manufacturer will sell to the dealer repairs and parts of automobiles made by the manufacturer not included in the foregoing at a discount of 25 per cent. from the list price, terms cash with order, f. o. b. cars, Pontiac, Michigan.

"8. The manufacturer will furnish the dealer a supply of catalogues, circulars, etc., as he may publish from time to time free to the dealer, the dealer to pay transportation charges thereon.

"9. It is agreed that the responsibility of the manufacturer for loss or damage shall cease upon delivery of the goods by the manufacturer to the transportation company or in person to the dealer or his representative.

"10. All claims on account of defective material in the construction of said automobiles must be made by the dealer within 60 days after the delivery of automobiles, etc., to the dealer or his customers, and upon any such material being submitted to the manufacturer, properly tagged, giving the number of the automobile from which it was taken, the name and address of the owner, and the date of sale, and such other information as may be necessary to identify the machine, the said manufacturer agrees to replace such parts gratis if upon his examination in the estimate of said manufacturer they may be found to be defective.

"This agreement does not cover defective tires, rims, coils, radiators, and other equipment not manufactured by the Oakland Motor Car Company (or used by them in their equipment). All claims must be made by said dealer on the respective manufacturers of said tires, rims, coils, radiators, and other equipment, names of which manufacturers appear on the defective described parts. The freight or express charges on such parts returned to the manufacturer for credit or replacement must in all cases be prepaid by the dealer.

"11. That no order for automobiles, automobile parts, or attachments shall be binding upon said manufacturer, unless such orders are submitted in writing, clearly specifying as to kinds, styles, date of shipment, etc., and accepted by the manufacturer at least 30 days prior to date for delivery, and such orders shall be subject to delays caused by strikes, fires, or other causes beyond the manufacturer's control.

"12. This contract expires by limitations September 1, 1909, or may be canceled for just cause by either party giving a 30 days' written notice, and that cancellation of this contract shall be sufficient to cancel all orders for automobiles or parts thereof which may have been received from said dealer and not delivered prior to date the cancellation takes effect.

"13. That this agreement has been fully read and understood by the dealer, and that there are no agreements or understandings, either oral, written, or otherwise, which in any manner affect or conflict with the terms and conditions herein.

"14. That any violation of the terms and conditions of this contract by either party may be considered sufficient cause for terminating the same without the notice prescribed.

"In witness whereof the parties hereto have signed this agreement the day and year first above written.          Oakland Motor Car Company,
"[The Manufacturer,]
"By E. M. Murphy, Prest.
"Indiana Automobile Co.,
"[The Dealer,]
"By S. W. Elston.

"This agreement shall in no way be binding upon the manufacturer unless approved by an officer of the Oakland Motor Car Company.
      "Approved:
                  "Oakland Motor Car Company,
                      "[The Manufacturer,]
                          "By E. M. Murphy, President.
      "Addition to above agreement:
      "In consideration of the territory specified herein, the dealer agrees to purchase 50 cars from the manufacturer during the term of this agreement, and as many more as their wants may require and we can supply. The dealer to deposit $50 apiece on 25 cars and will deposit $50 on each of the other 25 cars as soon as the sample cars can be delivered."

The issues and facts involved for consideration are stated in the opinion.

Henry W. Wales and Sidney S. Gorham, both of Chicago, Ill., for plaintiff in error.

Morris M. Townley, David B. Gann, and Geo. H. Peaks, all of Chicago, Ill., for defendant in error.

Before BAKER and SEAMAN, Circuit Judges, and ANDERSON, District Judge.

SEAMAN, Circuit Judge (after stating the facts as above). The verdict and judgment against the plaintiff in error, defendant below, rest solely on this proposition: That the agreement in suit constitutes a binding contract for purchase and sale of 50 of its two-cylinder automobiles, of the type listed at $1,250, making their price to the plaintiff below (as dealer) $937.50 each. While the plaintiff's declaration contains several counts, charging breaches of the agency agreement referred to in various forms, its testimony at the trial was limited to the assumed phase thereof above stated, as averred in the fourth count. Accordingly the trial court instructed the jury, not only (in effect) eliminating all other counts from consideration, but "that the plaintiff has proved a contract whereby the defendant agreed to sell the plaintiff 50 automobiles" so specified as to type and price, together with the further instruction that "the defendant committed a breach" thereof, by notifying the plaintiff, on October 31st, without justification, that it "declined to deliver any further or additional automobiles thereunder," and that the only question for the jury to consider was the amount of "damages to be awarded to the plaintiff" for such breach. It is both obvious and undisputed, therefore, that the judgment can be upheld only upon conclusive evidence of such contract obligation to sell and deliver the particular cars so described. Exceptions are preserved, both to the above instruction and for denial of the defendant's request to direct a verdict in its favor, also for denial of other instructions requested as to the effect of the agreement, and we proceed to consideration of the question thus stated, without taking up the further inquiry suggested, whether the provision referred to was rightly treated as severable from the agency contract for independent enforcement.

The contract in suit was entered into September 16, 1908, with its main provisions in the printed form used by the defendant as manu-

facturer of "Oakland automobiles," for an agreement establishing selling agencies for its products. Referring to the defendant as "the manufacturer" and the plaintiff as "the dealer," it grants to the dealer "the exclusive right of sale of Oakland automobiles and parts thereof" for several counties named in the state of Indiana, and provides (clause 12) that the "contract expires by limitation September 1, 1909, or may be canceled for just cause by either party giving a 30 days' written notice." In respect of all provisions in the body of the contract as signed by the parties, it is both conceded on behalf of the plaintiff and unquestionable, that the terms thereof create no mutual obligation for purchase and sale of the automobiles as between manufacturer and dealer, and that the only agreement in that line is contained in clause 5, providing for sale to the dealer; and this is qualified by the terms of clause 11, that any order sent in by the dealer shall not be "binding upon said manufacturer" unless accepted by it "at least 30 days prior to date for delivery." Another provision, however, appears in writing at the foot of the contract (below the signatures), which is the one relied upon for support of the instruction to the jury, reading as follows:

"Addition to above agreement:

"In consideration of the territory specified herein, the dealer agrees to purchase 50 cars from the manufacturer during the term of this agreement, and as many more as their wants may require and we can supply. The dealer to deposit $50 apiece on 25 cars and will deposit $50 on each of the other 25 as soon as the sample cars can be delivered."

When the contract was completed, the plaintiff deposited the $1,250 above stipulated, and ordered three cars of the two-cylinder type described in the above-mentioned instruction, which were then ready for delivery; and such cars were shipped and settled for in conformity with the agreement. In October, however, the defendant became dissatisfied with the conduct of the agency—which was carried on under the name of the "Independent Automobile Company," and at a place for showroom apart from the plaintiff's other agency—and on October 31st returned to the plaintiff $1,100 remaining on hand of its deposit under the agreement, with written notice that, "in accordance with the terms of the contract between" them of September 16th, "the said contract is hereby canceled and ended, for just cause and because the terms and conditions of said contract have been violated by you." The notice further specifies the matters complained of, but no issue arises herein in reference to the right to terminate the agency under the contract, and its only bearing on the present issue is to prove refusal on the part of the defendant to make further deliveries under the purchase clause.

The validity of the alleged contract of purchase and sale for future deliveries is challenged upon the twofold grounds of want of mutuality and of uncertainty in the subject-matter of sale, specified in essence as follows: First, that the purchase clause is deprived of mutuality of obligation by either one of two provisions of the contract, namely: (a) Clause 11, providing that no order for cars "shall be binding upon said manufacturer," unless submitted in writing "specifying

as to kinds," and "accepted by the manufacturer at least 30 days prior to date for delivery"; (b) clause 12, providing for cancellation of the contract by either party. Second, that "Oakland automobiles," named in the contract as its subject-matter, were of several types and prices, all embraced therein, and selection therefrom is left at plaintiff's option as ordered from time to time. Under the elementary rules of contract law, both mutuality of obligation and certainty of subject-matter are cardinal requirements for enforcement of any such contract for future sale and delivery, so that error is well assigned for reversal, if either of these propositions must be sustained.

[1] 1. The provisions (11 and 12) relied upon for the objection of want of mutuality are contained in the printed terms; but no doubt is entertainable that both are made applicable to the contract as an entirety, and not severable from the purchase clause, as contended on behalf of the plaintiff. Their effect, therefore, rests on the interpretation of their terms respectively. We believe the import of clause 11 to be unmistakable, in requiring an order to be sent in for each intended purchase, specifying the kind of cars desired, and providing that the manufacturer was not bound for sale thereof without his acceptance for that purpose as described. Thus the plaintiff's agreement to purchase 50 cars during the term was expressly made unilateral, through this stipulation (in effect) that the defendant was at liberty, either to accept or refuse compliance with any tender of purchase thereunder, leaving no basis for implying a promise on the part of the defendant to sell the 50 cars, and no liability for refusal to make further sales to the plaintiff. In reference to clause 12, it is frankly conceded in the brief on behalf of plaintiff "that a contract for future delivery of personal property, which confers upon either party the arbitrary right of cancellation prior to the delivery, would be lacking in mutuality," pursuant to the ruling of this court in the recent case of Velie Motor Car Co. v. Kopmeier Motor Car Co., 194 Fed. 324, 114 C. C. A. 284; but the contention is that the instant provision, to be "canceled for just cause by either party," does not fall within such rule, as it implies "a rightful or lawful cause." We believe use of the terms "for just cause" to be insufficient to exempt the contract from the rule applied in the above-mentioned case, as no means are furnished to ascertain what may have been the particular cause or causes thereby intended by both parties. That it did not mean violations of the contract terms appears from clause 14, which provides for termination for such cause "without the notice prescribed" in the above provision. In Cummer v. Butts, 40 Mich. 322, 325, 29 Am. Rep. 530, like agreement for terminating the contract "for good cause," was held to afford no "common and intelligible criterion for the parties, or any determinate sense whatever" as to the cause, so that no breach was committed in terminating the contract. See 1 Benjamin on Sales (4 Am. Ed.) § 51 and note; 1 Beach on Mod. Law of Contracts, §§ 72, 76.

[2] 2. The further objection raised, however, against enforcement of the alleged contract of sale for uncertainty as to the kind of cars which were to be ordered and delivered, we believe to be supported by

the undisputed facts in evidence; and thus presented for review, its consideration seems desirable, without resting our conclusions on the contract terms alone, as above discussed.

The contract was made under these circumstances: Its subject-matter, the "Oakland automobiles," were a new product of low-priced cars, manufactured by the defendant, commencing in the previous year. Up to the date of the contract the product consisted of two-cylinder cars, of three models, one listed at $1,200 and two at $1,250 each; but it then had in course of manufacture and nearing completion several types of four-cylinder cars, to be ready for sale in the season named in the contract, and listed at $1,600. Illustrations and full descriptions of these four-cylinder cars were then on exhibit, together with like exhibits of two-cylinder cars, as incorporated in the catalogue entitled "Oakland 1909." This catalogue was introduced in evidence by both parties, without proof of the date of publication; but we infer that it was not then printed, although its material matter was on hand. The season of the automobile trade usually runs from about October to the following September, and this contract was for the season known as "1909." Four-cylinder types for moderate priced cars were commenced by other manufacturers for that season and their promise of popularity (subsequently realized) was attracting the attention of the trade.

The plaintiff had carried on for five years, at Indianapolis, a prominent selling agency for automobiles, handling several higher priced cars, and desired the agency for a cheaper line. Its manager had learned of the Oakland machine as a good make, and visited the defendant's factory to look over the prospects for such agency, and there entered into the contract in controversy. His acquaintance then obtained with the progress of the work and the purpose of the defendant to have four-cylinder cars ready for the market of the ensuing season (as an additional line of "Oakland automobiles"), and with their illustrations, descriptive matter, and prices, to enter into the catalogue for the season, are uncontroverted facts at the date of the contract, and there is no testimony or circumstance which tends to show any intention or understanding of both parties that the agreement was to be limited to any particular car or cars thereof. Neither the fact of ordering three cars then on hand for immediate delivery, nor the alleged intention on the part of the plaintiff, not communicated to the defendant, can have weight in that direction; and the agreement "to purchase 50 cars from the manufacturer during the term," is not only applicable in terms to either and all of the above-mentioned cars shown by the catalogue and actually produced, but such understanding between the parties must be presumed. In other words, it was left at the option of the purchaser to select the cars for delivery, and there was no meeting of minds between the parties upon the particular cars to be sold, as to model or price. The alleged agreement thus provides no means to identify the cars to be named in any order, either for tender of performance on the part of the defendant or for enforcement at law as to unperformed portions thereof, and is without force

as a contract for future sale and delivery. Cold Blast Transportation Co. v. Kansas City Bolt & Nut Co., 114 Fed. 77, 81, 52 C. C. A. 25, 57 L. R. A. 696; Wheaton v. Cadillac Automobile Co., 143 Mich. 21, 106 N. W. 399.

We are of opinion, therefore, that the above-mentioned instruction to the jury was erroneous, and that the defendant was entitled to the instruction in its favor which was requested and denied.

Various other errors are alleged, in rulings of the trial court, upon the issue of breach on the part of defendant, objections to testimony as to damages claimed, and in respect of the measure of damages; but the questions raised thereby do not require determination, in view of the above conclusions against liability.

The judgment of the District Court is reversed accordingly, with direction to grant a new trial and proceed thereupon consistently with the foregoing opinion.