## WILLIAM C. ATWATER & COMPANY, INC. *v.* UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

No. 218. Argued May 1, 2, 1923.—Decided June 4, 1923.

Decided on the authority of *Willard, Sutherland & Co.* v. *United States, ante,* 489.

56 Ct. Clms. 458, affirmed.

APPEAL from a judgment of the Court of Claims, denying the appellant's claim for the difference between the market price of coal furnished the Navy and the price stated in a contract.

*Mr. Thomas Renaud Rutter* and *Mr. Gibbs L. Baker,* with whom *Mr. Karl Knox Gartner* and *Mr. Clarence A. Miller* were on the brief, for appellant.

*Mr. Rufus S. Day,* Special Assistant to the Attorney General, with whom *Mr. Solicitor General Beck* was on the brief, for the United States.

MR. JUSTICE BUTLER delivered the opinion of the Court.

This suit was brought to recover $73,964.48, being $3.70 per ton for 19,990.4 tons of coal furnished the Navy. Appellant seeks to recover the market price at the time of delivery, $6.50 per ton. The United States claims appellant was bound by contract to furnish it for $2.80 a ton, and this has been paid. The Court of Claims made findings of fact and concluded that the appellant was not entitled to recover.

In the spring of 1916, the Navy Department, being desirous of making contracts for coal for the ensuing fiscal year, ending June 30, 1917, issued its invitations for bids. Appellant submitted a bid and was awarded a contract to furnish a part of the coal required at Hampton Roads, Va. The invitation, form of bid, specifications and con-

tract in this case are the same as in *Willard, Sutherland & Co.* v. *United States,* decided this day, *ante,* 489, except that in this case the contract price was $2.80 per ton, and the quantity specifically mentioned was 200,000 tons.

On March 26, 1917, appellant was informed by the Department that the estimated quantity mentioned in its contract would be exceeded by about ten per cent. Appellant stated that it had not bid on tonnage in excess of 200,000 tons, and called attention to the heavy curtailment of production at its mines due to shortage of cars and labor. The Department cited the provisions of the contract as authority for requiring thereunder additional tonnage, stated that the same requirement was being made of other contractors, and that the contract price must apply to the total requirements during the fiscal year. Appellant then called attention to the provisions of note (b), printed in the margin,[1] giving relief in case of shortage of transportation, among other things, and submitted a statement as to the car supply, and maintained that on that basis it was only obliged to deliver 148,357 tons up to April 1, 1917, whereas it had actually delivered to date 160,377 tons, an excess of 12,020 tons, and stated that the total of 220,000 above referred to was subject to the reduction of 12,020 tons, making the actual tonnage deliverable by it under its contract 207,980 tons. The Department answered by letter and insisted that the

---

[1] "(b) Contractors will not be held responsible for fulfillment of their contracts during any war in which the United States may be engaged and which may affect them, or if prevented from doing so by strikes, or combinations of miners, laborers, or boatmen, accidents at the mines, or interruption or shortage of transportation. In such cases the obligation to deliver coal under their contracts will be canceled to an extent corresponding to the extent or duration of such war, strikes, combinations, accidents, interruption, or shortage, and no liability shall be incurred by the contractors for damages resulting from their inability to fulfill their contracts on account of the aforementioned causes."

ten per cent. additional must be furnished under the contract, and said:

" It cannot be recognized that you are entitled to any relief on account of such shortage of equipment as may have been experienced; as, in this respect, the Navy is accorded preferential treatment and this department has not failed to obtain the cars required by its suppliers when requests for cars to move Navy tonnage have been received."

Appellant then limited its claim for reduction on account of shortage of cars to the period prior to January 1, 1917, and stated that on that basis:

" The total of 220,000 tons requisitioned by the department under our contract is therefore subject to reduction to the extent of 8,219 tons, making the actual tonnage deliverable under the contract 211,781 tons."

April 26, 1917, the Department again insisted on the delivery of the additional ten per cent. May 22, 1917, acknowledging an order of 10,000 tons to be delivered between June 1, and June 10, the appellant stated that 204,-430.19 tons had been delivered; that 2,650 tons were assigned to barges, making a total of 207,080.19 tons, and that the 10,000 tons would make a total of 217,080.19 tons, leaving 2,920 tons. June 2, 1917, appellant wired the Department, saying:

" We beg to call attention to department's notice to us under date March twenty-sixth we would be required to deliver contract tonnage plus ten per cent, eighty-two hundred nineteen tons of which by reasons of short car supply we are delivering under protest. With completion of your requisition for ten thousand tons May twenty-first, two hundred and twenty thousand tons will have been delivered, being eighty-two hundred nineteen tons in excess of the tonnage required to complete contract."

Appellant delivered 219,990.4 tons of coal in all. It billed 211,771 tons at the contract price and 8,219 tons at $6.25 per ton, and protested against accepting the con-

tract price therefor, claiming that on account of car shortage it was not bound to deliver it. The Court of Claims found that when the excess over 200,000 was delivered, the market price was $6.50 per ton, and that such tonnage—19,990.4—was worth in the market $73,964.48 in excess of the contract price.

On the authority of the *Willard Case, supra,* it is held that by the language of the contract it appears that the parties intended that the Department might call for more or less than the 200,000 tons mentioned therein, and that because of lack of consideration and mutuality the contract at its inception was not enforceable, but that it became valid and binding to the extent that it was performed.

On the facts found it must be held that appellant abandoned its claim that it was not bound to furnish more than the 200,000 tons, and acquiesced in the Department's interpretation of the contract and accepted and performed its orders. By its billing the appellant conceded that the contract price applied to all except 8,219 tons. The provisions of note (b) have no relation to price. The purpose of that paragraph was to relieve the contractors from liability resulting from their inability to fulfill their contracts on account of causes mentioned therein. The Department at all times adhered to its position both as to quantity and price. Appellant's protest against delivery of the 8,219 tons because of car shortage, and against acceptance of the contract price therefor was of no avail. When it sued, the demand made was not in accordance with the billing, and it claimed the market price for all coal delivered in excess of the estimated quantity mentioned in the contract. The case is presented on the same grounds as was the *Willard Case,* and it must be held that all of the 219,990.4 tons was ordered and delivered under the contract.

*The judgment of the Court of Claims is affirmed.*