### UNITED STATES v. WHITE OAK COAL CO.

(Circuit Court of Appeals, Fourth Circuit. April 14, 1925.)

No. 2240.

**1. Courts ⟨=⟩284—District Court has jurisdiction of action for difference between market price of requisitioned coal and price paid by government.**

District Court has jurisdiction of coal dealer's action against the United States for difference between market price of coal requisitioned by government under Lever Act, § 10 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115⅛ii), and price paid by government.

**2. Trial ⟨=⟩136(3)—Jury should be instructed to find verdict in accordance with court's interpretation of writings, where all material evidence consisted of writings.**

Where all the material evidence in case consisted of writings to be construed by the court, the jury should have been instructed to find a verdict in accordance with court's interpretation of writings.

**3. Contracts ⟨=⟩10(4)—Government's requisition under Lever Act reserving right of revocation, and acceptance thereof, did not constitute enforceable contract.**

Where requisition by Secretary of Navy for coal under Lever Act, § 10 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115⅛ii), reserved the right to revoke the order at any time, the requisition and its acceptance did not constitute an enforceable contract; there being no consideration and mutuality.

**4. War ⟨=⟩14—Coal dealer's agreement to accept price specified in requisition held not procured by duress.**

Where government's requisition for coal under Lever Act Aug. 10, 1917, § 10 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115⅛ii), stated that full price specified would be paid on dealer's approval of price as satisfactory, but that only 75 per cent. of such price would be paid on dealer's refusal to approve price, leaving dealer to sue for such additional sum as would be just compensation, the dealer, after approval of price as satisfactory and acceptance of full payment, could not recover additional amount on theory that agreement to accept price stated was procured by duress.

**5. Appeal and error ⟨=⟩882(10)—Evidence not available in support of party at whose instance it was excluded as irrelevant.**

Party on whose objection evidence was excluded as irrelevant cannot avail itself of such evidence in support of its contention on writ of error.

**6. War ⟨=⟩14—Coal dealer, having received payment at increased price without objection, could not recover additional amount.**

Where requisition for coal under Lever Act, § 10 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115⅛ii), providing for payment of price specified in full if dealer indicated on order that price was satisfactory, or for payment of only 75 per cent. thereof, leaving dealer to sue for such additional sum as would be just compensation, on dealer's failure to so do, and where dealer indicated that price specified was satisfactory, but in separate letter protested that price was not sufficient, but subsequently presented claim under retroactive order increasing price, and accepted payment of the increased price, without protest, dealer could not, by virtue of protest previously made, recover amount in excess of that so received.

In Error to the District Court of the United States for the Southern District of West Virginia, at Charleston; George W. McClintic, Judge.

Action by the White Oak Coal Company against the United States. Judgment for plaintiff, and defendant brings error. Reversed.

B. J. Pettigrew, Asst. U. S. Atty., of Charleston, W. Va., and Howard W. Ameli, Sp. Asst. Atty. Gen. (Alfred A. Wheat, Sp. Asst. Atty. Gen., and Elliott Northcott, U. S. Atty., of Huntington, W. Va., on the brief), for the United States.

Charles W. Dillon, of Fayetteville, W. Va., and Robert S. Spilman, of Charleston, W. Va. (Dillon, Nuckolls & Mahan, of Fayetteville, W. Va., and Price, Smith & Spilman, of Charleston, W. Va., on the brief), for defendant in error.

Before WOODS, WADDILL, and ROSE, Circuit Judges.

WOODS, Circuit Judge. In this action to recover the difference between the price paid by the United States and the market price of 210,631.375 tons of coal, the plaintiff recovered judgment for $899,054.60. Error is assigned in the refusal to sustain a plea to the

jurisdiction, in the refusal to direct a verdict for defendant, in the admission and rejection of evidence, and in the instructions. The controlling evidence is in writing.

The Secretary of the Navy addressed a requisition dated June 12, 1919, known as Navy Order N-6121, to the White Oak Coal Company for 226,800 tons of coal to be delivered between July 1, 1919, and December 31, 1919. The requisition contained these provisions:

"1. In accordance with the provisions of the Acts of Congress, National Defense Act approved June 3, 1916, Food Control Act approved August 10, 1917, Naval Appropriation Act approved July 1, 1918 (quoted in part on back of this page), and acting under the direction of the President of the United States, by virtue of the authority vested in him by the Constitution and laws of the United States, an order is hereby placed with you under the conditions to furnish and deliver material or services needed by the Navy as in sheet 1 attached. Compliance with this order is obligatory, and shall take precedence over all commercial orders or contracts placed with you.

"(a) The price herein stated has been determined as just compensation for the material to be delivered or service to be rendered. If satisfactory to you, payment will be made accordingly and acceptance of this price will be considered as constituting a formal release of all claims arising under this order. If the price is not satisfactory and you so manifest below in writing, you will be paid 75 per cent. only of the designated amount. Further recourse may be had by suit against 'the United States to recover such further sum as added to the said 75 per cent. shall make up such amount as will be just compensation therefor.'

"2. This order must be accepted and complied with in any event, and if placed in accordance with subparagraph A, you are only required to indicate below whether the price stated and fixed is satisfactory or is not satisfactory. If not satisfactory, a separate letter of comment and qualification must accompany the original order that is to be signed by you and returned. * * *

"Deliveries to commence July 1, 1919, and continue until December 31, 1919, unless otherwise modified or revoked.

"Prices as herein stated will be subject to change due to change in wage scale or freight rate as may, in general, be applicable to the field in question and operative on the coal called for hereunder."

The price was stated to be $3.08 a ton.

Ebbert, the sales manager of the White Oak Coal Company, held the matter under consultation with the other officers of the company until August 1, 1919. On that day he returned to Admiral McGowan for the Navy the requisition with the following acceptance signed at the foot:

"The above order is accepted subject to the conditions in subparagraph above. The price therein stated and fixed as being reasonable is satisfactory. White Oak Coal Company, by C. B. Ebbert, Manager of Sales."

Accompanying the acceptance was the following letter:

"We inclose you herewith, properly signed, your Navy Commandeer Order N-6121 dated June 12, 1919, covering the supply of certain tonnage requisitioned for the account of the United States Navy. Our wishes in the matter are to comply with this requisition but in signing this commandeer order the White Oak Coal Company wishes it understood that they do not waive any of the legal rights that they might have in the matter."

From July 1, 1919, to December 31, 1919, the government received 68,000 tons of coal at the price of $3.08. On November 25, 1919, the Secretary of the Navy notified plaintiff that Order N-6121 would be continued under "the same general conditions as set forth in the Navy order above mentioned." At the foot of this notice and order the plaintiff accepted in writing "subject to the conditions of Navy Order N-6121." On May 11, 1920, an application of the plaintiff for an increase in price to $3.417 a ton on account of the increase of wages, as provided for in Navy Order N-6121, for coal supplied after December 31, 1919, was granted. This modification was accepted by the plaintiff by signing the written statement that "the price herein stated and fixed as being reasonable is satisfactory." Again on June 10, 1920, the application of plaintiff for an increase in price on the same ground to $3.711 a ton after April 1, 1920, was allowed and accepted by the plaintiff in the same words. On August 18, 1920, the Navy increased the price to $4.00, retroactive to April 1, 1920. Receiving no answer to the letter indicating this increase, the Paymaster General of the Navy on September 13, 1920, wrote to the plaintiff requesting prompt attention and saying:

"As will be noted from the Navy Order, the amount to be paid is contingent upon the acceptability of the price by the supplier.

"Unless early announcement as to your decision in the matter is therefore received,

it will be necessary to suspend payments. Since this action is not desired your prompt return of modifying letter with appropriate accomplishment is requested."

On receipt of the letter of the Paymaster General, plaintiff returned the order with a signed acceptance at the bottom that "the price herein stated as reasonable is satisfactory." The plaintiff sent with the acceptance the following protest, dated September 17, 1920:

"Your letter of September 13, file N–6121: We have signed and return herewith, under protest, your modification of Navy Order N–6121, dated April 18, for two reasons.

"First. To our mind the price is unfair as it does not represent the true value of the coal.

"Second. To our mind the allocation of the tonnage assessed to each shipper is unfair, inasmuch as we are called upon for more coal than we should be expected to furnish."

After this protest, the Navy increased the price by .3604¢ a ton, making the price $4.-3604 a ton for all coal supplied after August 16, 1920, thus running the increase back of the protest of September 17, 1920. The record does not disclose whether this increase was allowed on a later application for increase by the plaintiff or in response to the protest of September 17, 1920, nor does it disclose any express notice to the Navy from the plaintiff of satisfaction or dissatisfaction with the increase.

[1] The decision of the Houston Coal Co. v. United States, 262 U. S. 361, 43 S. Ct. 612, 67 L. Ed. 1028, has removed all doubt of the jurisdiction of the District Court under the facts stated. United States v. Archibald McNeil & Sons, 45 S. Ct. 258, 69 L. Ed. ——, decided by the Supreme Court March 2, 1925.

[2] All the material evidence in the case consisted of writings to be construed by the court, and the jury should have been instructed to find a verdict in accordance with the court's interpretation of those writings.

We think there is no foundation in the testimony for recovery for the difference between the market price and the price paid by the government for coal delivered. The original Navy Order N–6121 and all subsequent extensions and modifications were made under section 10 of the Lever Act of August 10, 1917, 40 Stat. 276–279 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115⅛ii):

"That the President is authorized, from time to time, to requisition foods, feeds, fuels, and other supplies necessary to the support of the Army or the maintenance of the Navy, or any other public use connected with the common defense, and to requisition, or otherwise provide, storage facilities for such supplies; and he shall ascertain and pay a just compensation therefor. If the compensation so determined be not satisfactory to the person entitled to receive the same, such person shall be paid seventy-five per centum of the amount so determined by the President, and shall be entitled to sue the United States to recover such further sum as, added to said seventy-five per centum, will make up such amount as will be just compensation for such necessaries or storage space, and jurisdiction is hereby conferred on the United States District Courts to hear and determine all such controversies."

[3, 4] The original requisition made on behalf of the Navy referred to this statute and gave most explicit instructions that if the price was satisfactory the plaintiff should say so in writing and receive the full price stated therein in full payment of the coal; that if not satisfactory the plaintiff should say so and receive 75 per cent. of the price stated in the requisition with the right to sue the United States for such additional sum as would be just compensation. After full consultation of its officers, plaintiff corporation wrote its satisfaction with the price proposed, delivered the coal, and received full payment of the bill certified by it to be correct and just. It is true the requisition and its acceptance did not constitute an enforceable contract because the government, having reserved the right of revocation at any time, was not bound, and hence there was a lack of consideration and mutuality; but upon performance by delivery and payment under the requisition the seller was bound and cannot ask a greater price than it agreed to accept and received. Willard Co. v. United States, 262 U. S. 489, 43 S. Ct. 592, 67 L. Ed. 1086; Atwater & Co. v. United States, 262 U. S. 495, 43 S. Ct. 595, 67 L. Ed. 1089. There was no duress nor compulsion on the part of the government. On the contrary, there was a favorable option to the plaintiff of receiving three-fourths of the government's valuation in cash and afterwards asserting its own valuation before a jury. Gibbons v. United States, 8 Wall. 269, 274, 19 L. Ed. 453; American Smelting & Refining Co. v. United States, 259 U. S. 75, 42 S. Ct. 420, 66 L. Ed. 833; Consolidated Coal Co. v. United States, Court of Claims 8262, decided January 26, 1925.

Ebbert, the sales manager of the plaintiff corporation, was allowed to testify that he

and the corporation did not mean what they said when they sent to the Navy Department the statement as to satisfaction with the price, signed by him; and that in the letter of the same date saying the plaintiff wished "it understood that they do not waive any legal rights that they might have in the matter," he meant to reserve the right to claim dissatisfaction with the price. General reservations cannot defeat specific provisions in written papers.

"Where there is a repugnancy between general clauses and specific ones, the latter will govern; and even if there is no actual repugnancy if the words of the contract are taken literally, yet when from the whole instrument it appears that the purpose of the parties was solely directed towards the particular matter to which the special clause or words relate the general words will be restrained." 2 Williston on Contracts, p. 1200; Hollerbach v. United States, 233 U. S. 165, 172, 34 S. Ct. 553, 58 L. Ed. 898.

Whatever the plaintiff meant to reserve, it could not have meant to reserve the price which it expressly told the Secretary of the Navy was satisfactory. Nor can its manager now be allowed to deny what he plainly wrote in accepting the government's order. The estoppel of the plaintiff to contest the price was made complete by the acceptance of payment without objection, thus procuring the purchase money from the government on its representation that it was satisfactory. American Smelting & Refining Co. v. United States, 259 U. S. 75, 42 S. Ct. 420, 66 L. Ed. 833.

[5] We are not concerned with the reason which induced the plaintiff to accept the price proposed by the government when the market price may have been higher. The government offered on the trial to prove as a reason that the plaintiff had outstanding contracts for future delivery of coal at a lower price, the frustration of which was beneficial to the plaintiff, but this evidence was excluded as irrelevant on the objection of the plaintiff; therefore, it cannot now be allowed to support its contention that it did not intend to accept the government's price because acceptance would have been unreasonable.

The coal delivered after September 17, 1920, on the communication and order of the government of August 18, 1920, requires special consideration. It is true that the plaintiff, having signed at the foot of the order a statement that "the price mentioned as reasonable is satisfactory," sent its letter of the same date expressly protesting that the price was inadequate, thus putting the government on notice of dissatisfaction.

If the matter had stopped there, the letter putting the government on notice of dissatisfaction with the price possibly would have entitled the plaintiff to recover the difference between the price paid and the market price for all coal received from it by the government after September 17, 1920, the date of the protest. But the recovery could not have extended to coal delivered before September 17, 1920, for up to that time plaintiff had expressed satisfaction with the price.

[6] As we have stated, however, the government after this protest of September 17, 1920, again increased the price to $4.3604 for all coal delivered after August 16, 1920. This increase, retroactive to August 16, 1920, a month back of its protest, the plaintiff without objection accepted, presented its claims therefor, and received payment. It cannot be held that its protest as to prices on September 17, 1920, is now effective as to subsequent deliveries when after that protest it accepted and received without objection an increased price covering the period to which the protest was limited.

The case comes to this: The plaintiff, with full knowledge of the statute and its rights thereunder, and with the most explicit directions of the Navy to say that the price was satisfactory or not satisfactory, over its signature, said the price was satisfactory and received the full price. Its protest that the price was inadequate of September 17, 1920, was of no avail when after the protest the government increased the price of the coal delivered after August 16, 1920, and the plaintiff accepted the increase and received payment at the increased price without objection. We think there is no basis in the evidence for any recovery.

Reversed.