## MOTOR CAR SUPPLY CO. v. GENERAL HOUSEHOLD UTILITIES CO.
### No. 3913.

Circuit Court of Appeals, Fourth Circuit.
Nov. 12, 1935.

NORTHCOTT, Circuit Judge, dissenting.

———◆———

Ben Moore and Robert S. Spilman, both of Charleston, W. Va. (E. S. Bock, of Charleston, W. Va., on the brief), for appellant.

R. G. Kelly and L. H. Kelly, both of Charleston, W. Va. (Brown, Jackson & Knight, of Charleston, W. Va., on the brief), for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

PARKER Circuit Judge.

This is an appeal by the Motor Car Supply Company, defendant in the court below, from a judgment in favor of the General Household Utilities Company, the plaintiff, for the sum of $8,870.20 on an account for goods sold and delivered. The defendant sought by special pleas, in the nature of pleas of set off to recover damages for wrongful breach of a sales agency or distributor's agreement. The court sustained demurrers to these pleas; and the only question raised by the appeal is as to the correctness of this action. The facts as alleged in the special pleas are as follows:

On February 21, 1933, one W. C. Grunow entered into a contract with defendant with respect to the purchase for resale of Grunow refrigerators in certain specified territory in West Virginia, Ohio, Kentucky, and Virginia. This contract was assigned by Grunow to plaintiff; and on September 12, 1933, plaintiff entered into a like contract with defendant covering the purchase and resale of radios in the same territory. These contracts were in exactly similar terms, except that one covered refrigerators and the other radios, the one relating to refrigerators being as follows:

"This agreement made this 21st day of February, A. D. 193 , between W. C. Grunow, and Motor Car Supply Co., State of West Virginia, hereinafter referred to as 'distributor,' shall govern the terms and conditions upon which said Grunow extends to the distributor the right or privilege, so long as this agreement is in force, to buy for re-sale in the territory hereinafter designated refrigerating units about to be placed upon the market by said Grunow.

"The terms and conditions hereof are as follows:

"1. The territory covered hereby is shown on the map hereto attached and made a part hereof, and identified by signatures thereon of both parties hereto.

"2. All refrigerating units ordered by the distributor shall be paid for accord-

ing to the terms stated on the invoice rendered to the distributor.

"3. The distributor agrees not to use or sell or dispose of any of said refrigerating units except for use in boxes or receptacles which conform to the written or printed specifications supplied to the distributor from time to time by said Grunow or his assigns, and also agrees to respect and acknowledge the validity of all trade marks, trade names or patents now or hereafter owned, controlled or adopted by Grunow or his assigns, and agrees that he will distribute said refrigerating units in accordance with the principles set forth for his guidance by said Grunow and in a manner not injurious to the reputation and good-will of said products.

"4. It is agreed that either party may terminate this agreement by giving thirty (30) days' notice by registered mail to the other. Upon such notice being given by either party, the distributor agrees to sell to said Grunow or his assigns within fifteen (15) days after receipt of such notice and to none other whatever of said refrigerating units the distributor may then have on hand, and said Grunow, or his assigns is given the option to purchase the same from said distributor at the cost price paid therefor by said distributor.

"5. Said Grunow may assign this agreement and all benefits thereunder to a corporation to be organized by him for the purpose of manufacturing or marketing said refrigerating units.

"6. Both parties hereby acknowledge that there are no promises, agreements, representations or understandings between them which in any way conflict, modify, supplement or affect the provisions herein contained.

"In witness whereof the distributor has executed and delivered these presents to W. C. Grunow for his approval and acceptance.

"W. C. Grunow.
"Motor Car Supply Co.,
"By H. F. Shepherd, Pres.
"Distributor."

The allegation with regard to the making of these contracts is followed in the special pleas by an allegation that defendant, at the request of plaintiff, entered upon a merchandising campaign for the year 1934, employed an expert sales-man, procured a large number of persons in the territory to act as dealers and at a meeting in Chicago in January 1934, agreed to order from plaintiff during the year 1934 679 refrigerators which plaintiff agreed to deliver. The allegations with respect to the matter last mentioned are as follows: "That at said meeting in Chicago, the plaintiff proposed a quota for the defendant of six hundred and seventy-nine (679) Grunow Electric Refrigerators, to be sold by the defendant, through its dealers, during the season of 1934, and requested the defendant to agree to order during 1934 at least the number of refrigerators proposed as a quota; that thereupon defendant, through its aforesaid representatives, then and there agreed with the plaintiff that defendant would, during the season of 1934, order from the plaintiff Grunow Electric Refrigerators in a number equal at least to the quota so proposed by the plaintiff, and the plaintiff agreed to fill the orders of the defendant therefor."

This is followed by allegations that, but for the cancellation of the contract, defendant would have sold the 679 refrigerators and would have realized a profit of $20,000, that defendant ordered two carloads of refrigerators for shipment the latter part of February, 1934, and that plaintiff accepted the order but failed and refused to deliver the refrigerators, and that plaintiff sent defendant a registered letter, bearing date of February 13, 1934, "informing the defendant that defendant's said distributor's agreements were thereby terminated."

We think that the case is clearly ruled by our decision in Ford Motor Co. v. Kirkmeyer Motor Co. (C.C.A.4th) 65 F.(2d) 1001, and that the action of the judge below in sustaining the demurrers to the special pleas was correct. It is conceded that this would be true but for the agreement made in Chicago for the sale to defendant of 679 refrigerators during the year 1934. There is no allegation, however, that the contract of February 21, 1933, was abrogated or modified in any way; and, in the absence of specific allegation to that effect, it must be assumed that the terms of that contract, which prescribed "the terms and conditions upon which dealings would be had," 65 F.(2d) 1001, 1004, entered in-

to and formed a part of the Chicago agreement for the handling of the 679 refrigerators.

In this connection, it is to be noted that the pleas as originally filed alleged merely that a quota of 679 refrigerators was assigned defendant for the year 1934, and that, in the amended pleas, the allegation is that at the Chicago meeting a quota of 679 refrigerators to be sold by defendant during the year 1934 was proposed, that defendant agreed that it would order this quota during the year 1934, and that "plaintiff agreed to fill the orders of the defendant therefor." There is no allegation of any specific contract to sell particular types of refrigerators at agreed prices; and, upon the face of the pleadings, the conclusion is inescapable that the Chicago agreement amounted to no more than an agreement to handle a certain number of refrigerators during the year 1934 under the terms and conditions of the existing contract. If it had been intended by that agreement to abrogate or modify the plaintiff's right of cancellation and repurchase as specified in the original contract, this should have been made a term of the agreement and should have been specifically alleged in the pleas. In the absence of such allegation, we are not justified in assuming that there was any agreement to modify the terms of the original contract, but must assume that the agreement as to the quota of refrigerators to be sold and purchased during the year 1934 was subject to its terms. There would be no more reason to hold that the contract was modified as to the right to cancel by an agreement fixing the quota of refrigerators to be sold during the year than by the acceptance of an order for a definite number of refrigerators; and no one, we think, would contend that the right of the plaintiff under the contract would be in any wise affected by the acceptance of such an order. The Chicago agreement modified the original contract only to the extent of writing into it the number of refrigerators to be sold to and purchased by the distributor during the year 1934, leaving the other terms of the contract as to cancellation, etc., in full force and effect.

Looking, then, to the terms of the original contract, we find that either party might terminate it, with or without cause, by giving 30-day notice to the other, and that plaintiff was given the option to purchase from the defendant, at cost price, any of the refrigerators that defendant might have on hand at the time of the receipt of the notice. This means, of course, that the contract did not bind plaintiff to sell any refrigerators to the defendant unless it desired to do so, and might at any time be terminated by plaintiff; for the effect of the repurchase option was to relieve plaintiff of the duty of making delivery during the 30-day period even on orders that had theretofore been accepted.

As the plaintiff was not bound to make deliveries under the contract, therefore, it was void for lack of mutuality in so far as it provided for future sale or purchase. The law is well settled that, where a contract for the future delivery of personal property confers upon either party an arbitrary right of cancellation prior to delivery, it is lacking in mutuality and will be held binding upon the parties only to the extent that it has been performed. Ford Motor Co. v. Kirkmeyer Motor Co., supra; Willard, Sutherland & Co. v. United States, 262 U.S. 489, 493, 43 S.Ct. 592, 67 L.Ed. 1086; Atwater & Co. v. United States, 262 U.S. 495, 43 S.Ct. 595, 67 L.Ed. 1089; United States v. White Oak Coal Co. (C.C.A.4th) 5 F.(2d) 439, 441; Cold Blast Transportation Co. v. Kansas City Bolt & Nut Co. (C.C.A.8th) 114 F. 77, 81, 57 L.R.A. 696. And, with respect to distributor's contracts, like that here under consideration, it is equally well settled that such a contract, which does not bind the manufacturer to sell and deliver, and which is terminable at will, imposes no liability upon him if he terminates it or refuses to make deliveries to the dealer. Ford Motor Co. v. Kirkmeyer Motor Co., supra; Jordan v. Buick Motor Co. (C.C.A.7th) 75 F.(2d) 447; E. I. Du Pont De Nemours & Co. v. Claiborne-Reno Co. (C.C.A.8th) 64 F.(2d) 224, 89 A.L.R. 238; Curtiss Candy Co. v. Silberman (C.C.A.6th) 45 F.(2d) 451, 452; Nebraska Aircraft Corporation v. Varney (C.C.A.8th) 282 F. 608; Huffman v. Paige-Detroit Motor Co. (C.C.A.8th) 262 F. 116, 117, 118; Studebaker Corporation of America v. Wilson (C.C.A.3d) 247 F. 403; Oakland Motor Car Co. v. Indiana Automobile Co. (C.C.A.7th) 201 F. 499; Velie Motor Car Co. v. Kopmeier Motor

Car Co. (C.C.A.7th) 194 F. 324. As pointed out by Judge Hook in the case of Huffman v. Paige-Detroit Motor Co., supra, the contract merely "furnished a basis for future dealings to be observed no longer than was mutually satisfactory. There was no hard and fast commitment of either party if ,he chose to break away."

It is argued that there was a breach of the contract, in that it was terminated without the giving of the 30-day notice provided and that damages should be allowed, in any event, with respect to the two carloads of refrigerators actually ordered prior to its termination. As pointed out above, however, the plaintiff had the option to purchase at cost all refrigerators which the defendant had on hand when notice of cancellation should be given; and the law would not require the vain formality of delivering the refrigerators ordered to the end that the option of buying them back might be exercised. The failure to ship the refrigerators under the circumstances was a practical exercise of the option; and, even if there was a technical breach of the contract in terminating it without giving the 30-day notice provided therein, defendant could have sustained nothing more than nominal damages from the breach. We are not prepared to say, however, that the pleas allege a breach of the contract with respect to the 30-day notice, the purpose of which was merely to give to the defendant an opportunity during that period of disposing of goods on hand as an accredited dealer, in the event the plaintiff did not exercise its option to purchase. Chevrolet Motor Co. v. Gladding (C.C.A.4th) 42 F.(2d) 440, 443. The allegation is that the defendant received a letter notifying it that its distributor's agreements were thereby terminated. It is not alleged, however, whether the letter professed to terminate the agreements as of the date of its receipt or in accordance with the terms of the contract, which would be 30 days after its receipt. As the language of the pleas must be taken most strongly against the pleader, we do not think that they should be held to allege a breach of the contract with respect to the giving of the 30-day notice.

Such contracts as those we have here, between manufacturers and distributors of goods, reserving to the manufacturer an arbitrary and unrestricted right of cancellation, are not uncommon. And while, as we said in the Kirkmeyer Case, there is a natural impulse to be impatient with the form of contract which places the comparatively helpless dealer at the mercy of the manufacturer, we do not make the contracts for the parties, and we cannot protect them against lawful agreements and conditions which they may see fit to make for themselves. It is no doubt true that the manufacturer who is seeking distributors for merchandise for which he has largely created the consumers' demand by expensive advertising campaigns feels that he must keep control over the distribution of the product, and that distributors are willing to incur expense in preparing to handle such a product, even though their contracts may be terminable at the will of the manufacturer, in the hope that the business which they will build up will lead to the continuation of the relationship thus established. Where parties deal upon such a basis, however, they cannot invoke the aid of the courts when their expectations are disappointed. Our function is to interpret and enforce contracts, not to make or extend them.

For the reasons stated, we think that the learned judge below was correct in sustaining the demurrer to the special pleas, and the judgment appealed from is accordingly affirmed.

Affirmed.

NORTHCOTT, Circuit Judge (dissenting).

The effect of the agreement made in Chicago was, under the pleadings, to modify the original agreement, at least to the extent of the number of refrigerators which the defendant agreed to purchase and the plaintiff agreed to sell. The failure of the plaintiff to give the 30-day notice expressly required by the original agreement brings this case squarely within the rule laid down by this court in Chevrolet Motor Co. v. Gladding (C.C.A.) 42 F.(2d) 440. The Chicago agreement set up in defendant's plea affected the business for the ensuing year and for that period waived the cancellation clause in the original agreement. When litigants are seeking to enforce contracts of this character, they should be held to the strictest accountability by courts of justice.

The action of the court below should be reversed.