Peter M. MELCHIORRE, Appellant,

v.

CALIFORNIA CANNERS AND GROWERS, an unincorporated association, Appellee.

No. 11988.

United States Court of Appeals Fourth Circuit.

Argued March 7, 1968.

Decided April 25, 1968.

Beril M. Abraham, Norfolk, Va. (Russo, White & Katherman, Norfolk, Va., on brief), for appellant.

Hugh L. Patterson, Norfolk, Va. (John M. Hollis, and Wilcox, Savage, Lawrence, Dickson & Spindle, Norfolk, Va., on brief), for appellee.

Before BRYAN and CRAVEN, Circuit Judges, and RUSSELL, District Judge.

ALBERT V. BRYAN, Circuit Judge:

Summary judgment went for California Canners and Growers (Cal Can), a non-profit cooperative association of that State, when it was sued by Peter M. Melchiorre for terminating without notice his distributorship of its products. Trading as Melchiorre Brothers, he was a vendor of a variety of food produce in Virginia and North Carolina. Decision was grounded on the view that the arrangement was a nudum pactum— merely a consensual understanding lacking the mutuality essential to a contract. We differ; in our opinion it was in law a legally viable agreement, a breach entailing liability.

The facts, scarcely in dispute and best stated in the opinion of the trial judge, are these:

"Plaintiff, Peter M. Melchiorre, was already a distributor of food products in January, 1949, when he obtained an exclusive distributorship from San Jose Canning Company, the forerunner of the defendant, California Canners and Growers, for the distribution of tomato products * * * in Virginia and North Carolina. The arrangement was oral and included a promise on the part of Melchiorre that he would devote his best efforts to promoting the products and *agreed to han lle no other tomato products* which conflicted

with these brands. The contract had no specific time of duration. The contract was cancelable at will by either party." (Accent added.)

\* \* \* \* \* \*

"The balance of the deposition of the plaintiff and other evidence available indicated that there was no obligation on the plaintiff to buy any of the products of the defendant at all, and therefore no obligation to buy any specific quantity... Likewise, there was no obligation on the defendant to provide any of the products to the plaintiff."

After trading in this pattern for 20 years, Melchiorre in September 1966 learned that some of Cal Can's brands embraced in the plan could be bought from his competitors. On word of his awareness, Cal Can notified Melchiorre on November 14, 1966 that his distributorship had been cancelled as of October 15, 1966.

Melchiorre's position is that there was a live contract, and while it was "cancelable at will by either party", as the District Court found, still he was entitled to reasonable notice of an intended termination. Cal Can, conceding the exclusiveness of Melchiorre's privilege, insists that it was under no legal obligations to him—that it was only a de gratia provisioning of Melchiorre. In this it notes the absence of any terms of the bargain affirmatively requiring Cal Can to sell or Melchiorre to buy. A further contention is that there is in law no liability of a principal to an agent for discontinuing the relationship unless the agent has made an investment or expenditure of some kind, other than his services, on the faith of the agency.

■ Interpreting the contract, we think equitably the design of dealing requires that the agreement be construed as necessitating fair advance advice by Cal Can to Melchiorre of its decision to sever the connection. As both parties must have foreseen, Melchiorre could not without loss honor his pledge to the very brink of an abrupt withdrawal of the distributorship; he would need time to negotiate another source of supply. It would, indeed, be a weaselly phrase if despite Cal Can's avouchment of the exclusiveness of Melchiorre's right or privilege, it could with impunity dissolve and reassign the distributorship the moment after it had been consummated. Cal Can's abrogation ought not to be dismissed through so sterile a reading of its assurance.

■ In law, too, we think there was a subsisting contract. The reciprocal promises of exclusiveness were the quid pro quo of valuable consideration. Corbin, Contracts § 142 (1952). Melchiorre promised to devote his best efforts to the promotion of Cal Can's tomato products, and not to sell similar brands of others. He surrendered his freedom to dispense the output of Cal Can's competitors. Nothing more was needed to forge these mutual engagements into a contract.

■ The stipulation confining Melchiorre's distribution to Cal Can's products is also the feature which bars Cal Can's defense of damnum absque injuria. With this condition imposed, no investment or other preparation for the undertaking was essential to the liability of Cal Can to Melchiorre. This is true no matter the role Melchiorre was playing opposite Cal Can, agent, broker, factor, optionee or purchaser. That proviso distinguishes this suit from those on which Cal Can relies for exoneration, e. g., Burger Brewing Co. v. Summer, 261 F.2d 261 (4 Cir. 1958); Terre Haute Brewing Co. v. Dugan, 102 F.2d 425 (8 Cir. 1939); Motor Car Supply Co. v. General Household Utilities Co., 80 F.2d 167 (4 Cir. 1935); Ford Motor Co. v. Kirkmyer Motor Co., 65 F.2d 1001 (4 Cir. 1933); and Curtiss Candy Co. v. Silberman, 45 F.2d 451 (6 Cir. 1930).

Those decisions excused the principal because the agent or franchiser had incurred no expense in order to carry his burden under the agreement. In no instance, however, was there a covenant by the plaintiff to refrain from handling the merchandise of another. In Cal Can's

**416**

only other defensive precedent, Allied Equipment Co. v. Weber Engineered Products, 237 F.2d 879 (4 Cir. 1956), there was a doubt whether the agent had agreed not to touch competitive products; it was left as a future jury issue.

■ However, *Allied* does hold that if there is a consideration over and beyond the agent's promise to exert his best efforts in the enterprise, then the principal is liable for a termination without due notice. *Allied* reaffirmed what we said in Jack's Cookie Co. v. Brooks, 227 F.2d 935 (4 Cir. 1955) cert. den. 351 U.S. 908, 76 S.Ct. 697, 100 L.Ed. 1443, when it declared, quoting Professor Williston[1], that:

> "It is the settled law of agency that if the agent or employee furnishes a consideration in addition to his mere services, he is deemed to· have purchased the employment for at least a reasonable period where the duration of the employment is not otherwise defined." 237 F.2d at 882.

Certainly Melchiorre's agreement to merchandise only Cal Can's tomato products and no other's corresponding items constitutes "a consideration in addition".[2]

■ To give him the opportunity to establish new connections, Melchiorre should have had reasonable warning of Cal Can's intention to bring their venture to a close. Cal Can was remiss in this duty and its disregard of it is actionable. How much time constituted fair notice and the extent of the hurt to Melchiorre for want of it are factors in the ascertainment of damages.

Constrained to vacate the judgment on appeal, we remand the case for entry by the District Court of a summary judgment of liability for the plaintiff and a new trial limited to damages. F.R.Civ. P. 56(d); 7 Moore's Federal Practice p. 2241 § 56.12.

Reversed and remanded.

1. 4 Williston, Contracts § 1027A(3) (Rev. ed. 1936). See also Restatement, Agency § 442, comment c (1933).

2. In argument the parties stipulated that the controlling law in this diversity case was Virginia's or California's, as the con-

tract was consummated in one or the other. No decision from either State is cited to us manifesting a prevailing view there contrary to our conclusion. See J. C. Millett Co. v. Park and Tilford Distillers Corp., 123 F.Supp. 484 (N.D.Cal.1954).